In re Richard Lee RENFRO et al.,
Appellants,

v.

JACKSON COUNTY JUVENILE COURT,
Respondent.

Nos. 23571–23573.

Kansas City Court of Appeals.

Missouri.

June 28, 1963.

of the Circuit Court of Jackson County in consolidated cases involving three minor children. These children, two brothers and their sister, are Richard Lee Renfro, born January 31, 1960; Donald Eugene Renfro, born November 6, 1947; and Delores Elaine Renfro, born November 26, 1955.

On December 5, 1960, a petition to terminate parental rights was filed by the juvenile officer of Jackson County in the interest of Delores. The petition alleged it was filed pursuant to Sections 211.441 and 211.451, RSMo. 1959, and stated, "said parents habitually use intoxicating liquor, the use of which is detrimental to the well being of aforesaid Delores Elaine Renfro."

On July 10, 1961, the juvenile officer of Jackson County in the interest of Richard Lee Renfro seeking to place him under the jurisdiction of the court, filed a petition alleging his parents neglect to provide him with the proper support and other care necessary for his well being and that he is in need of the care, treatment and services of the court; and on July 31, 1961, filed a petition seeking to terminate the parental rights to Richard. This latter petition contained the same allegation of grounds for termination as those contained in the petition concerning Delores.

About this same time a petition to terminate the present confinement of Donald was filed. Earlier and on May 12, 1958, a petition had been filed alleging Donald's home environment "is injurious to his welfare because both parents drink alcoholic beverages to excess and frequently fight with each other." Apparently a similar petition had been filed concerning Delores.

On September 11, 1959, the Juvenile Court, after a hearing, had taken jurisdiction of both Donald and Delores and had placed them in a foster home located in Henry County. In June, 1960, these two children had been returned to the actual custody of their parents on a trial basis. In November 1960, after a further hearing, Delores was again placed in a foster home and Donald was committed to McCune

———◆———

James C. Morris, Morris, Lay & Tarver, Kansas City, for appellants.

No appearance for respondent.

HUNTER, Judge.

On this appeal we are reviewing judgments and rulings by the Juvenile Division

Home for Boys in Jackson County. Baby Richard had been with his parents all along, until just before July 1, 1961.

The parents of the three children, Dorothy Marie Renfro, born May 27, 1920, and Joseph Renfro, born June 19, 1914, filed answers in the various cases to the general effect that they were able to, had been and were willing to provide good, sufficient and proper care, support and maintenance for each of the children. They prayed that the petitions for termination of their parental rights be denied, and that the children be remanded to their care, custody and control.

All the mentioned matters came up for hearing on August 4, 1961, before the juvenile court judge. Each child was personally present, and both parents were in attendance with their attorney. Mr. William J. Koenigsdorf, who earlier had been appointed guardian ad litem by the court for all three children, appeared in that capacity. All of the actions were consolidated for the purpose of the hearing.

Thirteen witnesses testified at the August 4, 1961 hearing. We refer only to the substance of such of their testimony as is necessary to a proper disposition of the contentions made on this appeal.

About July 1, 1961, Pamela Phinney and Carol Casey, neither of whom knew the Renfros, just before dark were proceeding in their car on Highway 71 at Bannister Road in Jackson County. They noticed a car parked alongside the street and a baby out almost to the road playing in the gravel. Two and a half hours later they again drove by and seeing the baby still there rolling and crawling about 10 feet from the highway, they stopped to see if they could be of any assistance. The baby was crying and dirty. The parents, who were in the car drunk and very dirty, refused any help. The two women left and contacted a policeman. On their return with the policeman they noticed the mother's clothes were very dirty and unbuttoned down the front. She was staggering. The

police officers gave similar testimony, stating both Renfros were extremely intoxicated and covered with filth. They stated Mrs. Renfro's clothes were partly torn off and that the baby was filthy.

Mrs. Edith Marriott lived in the same apartment building with the Renfros for three months of the winter in 1960-61. She testified: "They were pretty well drunk most of the time. They had loud arguments, foul language. They would turn the baby loose in the hall, which was unheated, where the baby would be undressed. Mrs. Renfro would be passed out in the bathroom, which we had to share with them, partly dressed—sometimes she was completely undressed. And the baby was turned loose in the hall unsupervised when she would go downstairs to the phone or across the street, which it could have fallen down three flights of stairs." Mrs. Marriott told of other instances of neglect of the child. On one occasion when the Renfros were in a hot argument and using vile language, Mrs. Renfro told her husband to get out. As he reached the hallway she said, "Here, take your damned little bastard with you", and threw the baby toward him. Fortunately he caught it. The police were called.

Mrs. Lula Morris lived on the same floor in an apartment building on Tracy where the Renfros and the baby remained a short time. She related: "When they moved in, every night for a week or two, nearly every night, you would try to sleep and you couldn't sleep for her hollering and cussing him. * * * She used awful language, language we don't even say, let alone around children. And she was always drunk." She related instances when the child was neglected and left in unsafe places.

Mary Cohen who owned an apartment building on Jefferson Street rented an apartment to the Renfros. She had considerable difficulty with them: "—first time I came in her place was one evening, and she told me she had a toothache and she

was very drunk and the baby was, was in the little bed * * *. The second time when I (was there) she brought the baby's bed, she put it against the wall and kicked and broke the plaster and threw the bed outside and the baby slept on a little mattress on the floor. And she used to lay down quite a bit on that mattress, several times I saw her on the same mattress, and she was drunk and the baby was out on the floor and the refrigerator was open and the house was dirty, the chairs was broke—. * * * The baby was about, between six, six and seven months old. It looked to me like it was kinda small and it cried most of the time."

Mrs. Cohen described other instances where both Renfros were very drunk. "The baby was crying most of the time. I asked her once, was the baby sick, or was it hungry, * * * and she just cussed it out and called it some names, and that is all."

Other testimony disclosed that from November 30, 1960, to the date of the trial, August 4, 1961, the Renfros had resided at six different addresses. Mr. Renfro testified he and Mrs. Renfro had lived in at least 17 different places in the past three years. Mrs. Renfro acknowledged some 10 different additional addresses they had occupied prior to the past three years.

Miss Gertrude Fling, child welfare worker, stated she visited weekly with the parents from November, 1960, until April, 1961. She was trying to rehabilitate the home so Delores might return and Richard remain there. She frequently observed the baby with scanty clothing and no diaper. The Renfros moved six times during this five month period.

The police court records showing numerous convictions of both Mr. and Mrs. Renfro for drunkenness, disturbance of the peace and destruction of private property were received in evidence.

A neighbor since March 1, 1961, testified she never saw Mrs. Renfro intoxicated or heard any loud arguments, and that in so far as she had observed Mrs. Renfro took good care of the child and kept it clean. Another acquaintance, Mrs. Esther McNamara gave brief and somewhat similar testimony, as did Mrs. Renfro's father.

Both Mr. and Mrs. Renfro testified as to their care and affection for their children and of the adequacy of their present home, a four room residence which they moved into about March 21, 1961.

Mr. Renfro stated he was employed by Owens-Corning Fiberglas in Fairfax, had worked there for fifteen years and had a present gross earnings of about $450.00 a month. He asserted he was financially able to care for his children properly although he was in arrears about $50.00 in the $10.00 a week payments to a Mr. Antwiler of Clinton, Missouri, for the care of Delores and Donald who lived in the Antwiler's farm home from late 1959 until June 1960.

Mrs. Renfro testified of her affection for her children. She admitted having upon some occasions been arrested and convicted of being drunk, and of their frequent changes of address.

Donald, who was fourteen years old at the time of the hearing, testified briefly. He was in the eighth grade, and while at the McCune Home ran away twice, each time to go home. Three letters he wrote to his parents while he was at the McCune Home were introduced in evidence by appellants.

At the close of the hearing the court made and entered its orders and judgments as to each of the three minors, as follows:

(1) The order of November 7, 1960, committing Donald to McCune Home was continued in full force and effect. The petition of the parents to terminate such commitment was denied. (While appellants appealed from this order and judgment we were advised when the cause was argued that appellant no longer desires to pursue this portion of the appeal.)

(2) Regarding Delores, five years old, the court continued in full force and effect that part of its order of November 29, 1960, committing her to the care and custody of the Division of Welfare and terminated the rights of Joseph and Dorothy Renfro as parents, stating: "(I) believe that a preponderance of credible evidence sustains the petition, and, therefore, serious as it may be, (I am) impelled to hold that the petition should also be sustained. I might say that this decision is not reached lightly, but the opportunity the court has had today to hear and observe the witnesses, their demeanor on the stand, the sharp conflict in evidence, while it does not make it easy, leads (me) to believe that the preponderance of the credible evidence shows that these parents have been habitual users of intoxicating liquor and that the use of that liquor has been injurious to the care of Delores Elaine." The judgment read in part: "The court after hearing the evidence thereon (petition) and pursuant to the terms of Sections 211.441 and 211.451, Missouri Revised Statutes, 1949, V.A.M.S., finds that the parents of said minor child should have their rights as parents terminated, because said parents habitually use intoxicating liquor, the use of which is detrimental to the well being of said child, Delores Elaine Renfro."

(3) The court also entered judgment terminating the rights of Joseph and Dorothy Renfro as parents of Richard, stating in the order: "In Case No. 34549, the petition alleging that Richard is in need of the services of the court because his parents have neglected to provide him with the proper support and other care necessary for his well being, is by the evidence sustained. In the case 34549B, being a termination of parental rights petition, identical in nature with that involving Delores, (I) believe that the petition should be sustained. The disposition in case 34549 (I) feel should be the same as that which is presently in force so far as Delores is concerned, to wit, that Richard's care and custody should be and it is hereby committed to the care and custody of the Division of Welfare in the State of Missouri until further order of the Court." The judgment, after mentioning the pertinent statute, read in part: " * * * finds that the parents of said minor child should have their rights as parents terminated, because said parents habitually use intoxicating liquor, the use of which is detrimental to the well being of said Richard Lee Renfro." The court also terminated an earlier order requiring Mr. Renfro to pay $20.00 per month support for Delores.

Following their unsuccessful motion for new trial in each case, appellants have taken this consolidated appeal. There has been some delay in the presentation of the appeal because of the juvenile court's delay in providing an accurate transcript. We have not been favored with a brief by respondent.

In 1959 for the first time our legislature enacted laws specifically providing for the termination of parental rights by juvenile courts upon certain cause shown. Section 211.441 RSMo 1959, V.A.M.S., reads in part: "1. The juvenile court may, upon petition filed as provided in other cases of children coming under the jurisdiction of the court, terminate all rights of parents to a child when it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist: * * * (d) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well being of the child."

With the above evidence and statute in mind we consider appellants' charge that the trial court erred because "the weight of the evidence of appellants and the juvenile officer was that the parents had a good reputation in the neighborhood, had not been drinking except for one incident in July, and that they loved their children and wanted them back in the home."

■ It is apparent that much of what appellant contends above as reason for alleged error literally could be true and still not amount to error. It is possible, although not likely, for the parents to possess a good reputation in the neighborhood and to love their children and want them back and still be guilty of such conduct as to support a judgment for termination of parental rights. In the interest of justice and out of our determination to safeguard the welfare of the minor children we consider appellants' first contention of error as also including the charge that the weight of the evidence does not support any one or more of the conditions and findings required by Section 211.441, authorizing termination of parental rights; and, thus, that the evidence was insufficient to authorize and justify the termination of parental rights and the taking away of the custody of the children.

■ Both by law and by nature parents have the primary right as against the world to their children. In its wisdom our legislature enacted this termination of parental status statute. It is axiomatic that under it parents are not to be deprived of their children and have their parental rights terminated except upon clear proof of one or more of the grave reasons specified by the legislative act. Whoever seeks to invoke the statute carries the full burden of proof. We recognize our legislature did not intend by the statute under consideration to provide that the relationship of parent and child might be lightly cast aside for any paternalistic sociological theory. Rather, the statute sets out only grave and compelling grounds for the action, essential to the welfare and protection of the child, and it should be so viewed and carefully applied.

We interpret the rather lengthy juvenile court finding and judgment entered in both Delores and Richard's cases to be the equivalent of a finding by the court in each case that the termination of all rights of the parents to each child is in the best interest of the child and that the parents are unfit by reason of habitual use of intoxicating liquor, which conduct is seriously detrimental to the health, morals or well being of the child.

■ This being a nonjury case it is our duty to review it upon both the law and the evidence as in suits of an equitable nature. We must give due regard to the opportunity of the trial judge who saw the witnesses first hand to judge the credibility of their testimony. The judgment is not to be set aside unless clearly erroneous. Supreme Court Rule 73.01(d), V.A.M.R. The question for our determination is not merely one of whether the trial court's findings were supported by substantial evidence, but rather it is our duty to make our own independent findings of fact and reach our own conclusions as to where the weight of the competent evidence lies. As so viewed we believe that such judgments are fully supported by the evidence and are in accordance with the weight of the competent and credible evidence.

As shown by the evidence the long and continuous record of both parents, and especially that of the mother, is one of chronic alcoholism over a period of years to such an extent as (1) to make the parents unfit thereby, and (2) to be seriously detrimental to the health and well being of these two children. The evidence also supports the conclusion that termination of parental rights as concerns Delores and Richard is in the best interest of these two children.

Appellants contend the orders of the court were based on past incidents and conditions rather than on present conditions. The language of the statute requires the court to find the enumerated condition or conditions "exist". The evidence supports a finding the parents are unfit by reason of habitual use of intoxicating liquor and that this condition as of the date of the trial exists. We find no merit in appellants' contentions to the contrary.

■ Appellants charge the Kansas City, Missouri police records relating to the parents, showing past convictions (the court made it clear mere arrests were not to be considered) were improperly admitted in evidence over objection. It is the law that a violation of a city ordinance is not a criminal offense and that such a conviction may not be shown to affect the witnesses' credibility under Section 491.050 RSMo 1959, V.A.M.S. Willis v. Wabash Railroad Company, Mo.Sup., 284 S.W.2d 503, 512, and cases cited. However, in a juvenile court hearing for termination of parental rights where one of the charged reasons for parental unfitness includes habitual use of intoxicating liquor evidence of convictions for drunkenness should be and in our opinion is admissible. Such convictions, being from a municipal court and involving city ordinances, are not admitted in evidence to generally impeach credibility but rather as evidence of use of intoxicating liquor to excess.

While the police records introduced in evidence also contained several convictions of disturbance of the peace and destruction of private property the trial judge made it clear he was considering only the relevant portions of the police records. Further, in addition to the actions to terminate parental rights the trial court had before it the actions and issues which we have mentioned earlier and we are not willing to say these convictions for disturbance of the peace and for destruction of property were of no relevancy to such actions. We find no merit in appellants' contention that it was reversible error to admit these records in evidence. See, Section 211.491 RSMo 1959, V.A.M.S.; 67 C.J.S. Parent and Child § 13(f), p. 673 ff.

■ Appellants also contend the witnesses were not properly sworn. In this contention they are not supported by the transcript and rely on statements of counsel, outside the record, to the general effect that it seems to be the practice of the juvenile judge to swear witnesses for one or more cases at one time as a group, and that possibly several witnesses in the cases before us were not present at the "mass" swearing. We do not approve of a group swearing of witnesses, and the proper practice is to swear each witness individually as he takes the witness stand. The dignity and solemnity of the oath should not be eroded or jeopardized by loose trial methods. And the transcript should reveal that each witness has been individually sworn. As so well stated in State v. Jackson, 318 Mo. 1149, 2 S.W.2d 758, "A judgment cannot be based upon testimony produced by a witness who is not put under the pains and penalties of perjury. The party affected by the testimony has a right to that assurance that his rights are not jeopardized by reckless statements."

■ However, we are not convinced that any witness was not sworn. At no time during the trial was any such suggestion made. Appellants' counsel concedes a number of witnesses were sworn as a group, but relies upon his memory as stated in his brief for his contention that the boy, "Donald was not sworn because he was upstairs during most of the proceedings and perhaps Mr. Pierce and Miss Fling were upstairs most of the time, too." This is not a sufficient showing that these witnesses were not sworn. Additionally, there was no action to terminate the rights of the parents as to Donald, and appellants have abandoned on appeal any contentions relating to Donald's confinement. Nor did Donald's testimony bear on the issues concerning the other two children.

Appellants' last two contentions are that Donald was not represented by a guardian ad litem and that no proper consideration was given to the offer of a friend to take the children into his home so they would not be put out for adoption. However, the record does show that William Koenigsdorf, a practicing attorney, was appointed as guardian ad litem for Donald and served in that capacity. Nor is there basis in the record for the claim that the court did not

give proper consideration to all the relevant testimony, including that of the mentioned friend.

■ As a part of the after trial motions the parents filed separate motions in the juvenile court to stay proceedings, to obtain right of visitation, and for recent pictures of the children. These motions were overruled by the juvenile court. Under the related circumstances we find no abuse of discretion or error by the circuit judge in overruling them.

Each of the judgments of the juvenile court on appeal before us is affirmed. It is so ordered.

All concur.