477 S.W.2d 718 (1972)
In the Interest of D____ J____ A____, a child: B____ S____ A____, Mother of D____ J____ A____, Appellant,
v.
Ralph L. SMITH, Juvenile Officer of the Juvenile Court of St. Louis County, Respondent.
In the Interest of G____ I____ A____, a child: B____ S____ A____, Mother of G____ I____ A____, Appellant,
v.
Ralph L. SMITH, Juvenile Officer of the Juvenile Court of St. Louis County, Respondent.
Nos. 34210, 34212.
Missouri Court of Appeals, St. Louis District.
February 22, 1972.
*719 Gregory D. O'Shea, St. Louis, for appellant.
Corinne R. Goodman, Miriam Bricker, Anne E. Forry, Clayton, for respondent.
WEIER, Judge.
In each of these cases, which were consolidated on trial below and now on appeal, the juvenile court of St. Louis County terminated parental rights of the mother as to each of her two minor sons. The mother has appealed from these judgments to this court.
Two petitions, one as to G____ I____ A____, a male child born October 9, 1966 and the other as to D____ J____ A____, a male child born January 23, 1968, were filed by the juvenile officer in the juvenile court, seeking to terminate parental rights of the mother and father of the two little boys. The mother and father had been divorced in December of 1968. As reasons for terminating parental rights, each of the petitions alleged the parents had "(a) abandoned the child and (b) wilfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection." Service was effected as to the mother, but no service was had on the father. After trial, the court ordered the mother's rights terminated.
Appellant mother contends there is a total failure of any clear, cogent, or convincing evidence tending to prove the grounds for termination of parental rights set out in the petitions and hence the judgments, being unsupported by the evidence, must be set aside.
To understand appellant's contention, we note the requirements under the statutes in such procedures. The pertinent portions of Section 211.441[1] read:
"1. The juvenile court may, upon petition filed as provided in other cases of children coming under the jurisdiction of the court, terminate all rights of parents to a child when it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:
* * * * * *
"(2) When it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition
*720 "(a) The parents have abandoned the child:
"(b) The parents have willfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection;
"* * * *."
Preliminary to the termination of parental rights, the juvenile court under Section 211.501 must find one or more of the conditions set out in Section 211.441 exist and, in addition, that such termination is in the best interest of the child.
Proceedings under Section 211.441 are of the utmost gravity. They contemplate a complete and final severance of all legal rights, privileges, duties and obligations between parent and child, with the prospective replacement of the natural by an adoptive parent or perhaps a guardian. This power given the juvenile court is purely statutory. Without such legislation, the power would not exist. Accordingly, the terms of the statute must be strictly applied. In re C____, Mo.App., 468 S.W. 2d 689, 691 [1]; In re Taylor, Mo.App., 419 S.W.2d 473, 475 [1, 2]. As directed by Section 211.501, it is only after the court finds one of the conditions listed in Section 211.441 exists, and then only when supported by clear, cogent and convincing evidence, that it may proceed to terminate parental rights. As to this, whoever seeks to invoke the statute must carry the full burden of proof. Renfro v. Jackson County Juvenile Court, Mo.App., 369 S.W.2d 616, 621 [4].
Turning to the evidence in these cases, we find a total absence of anything that could be said to support the charge of abandonment for one year before the filing of the petitions. Our conclusion in this respect was concurred in by counsel for the Juvenile Officer when the cases were submitted on appeal in this court. As to the other statutory conditions, we have searched for "clear, cogent annd convincing evidence," as required, that for one year before December 29, 1970, the date of filing the petitions, the mother of the two children "willfully, substantially and continuously or repeatedly neglected the child[ren] and refused to give the child[ren] necessary care and protection." Section 211.441, subd. 1(2), (b), supra. Again, the evidence and any reasonable inferences from the evidence fail to support the charge against the appellant.
The mother and father of the children were divorced in December of 1968. Three boys were born of the marriage. The eldest had been living with his maternal grandmother. The two younger boys had been placed in a foster home April 5, 1968. Evidence as to the termination was restricted by the court largely to the one-year period which preceded the filing of the petitions: that is, from December 29, 1969 to December 29, 1970. On January 2, 1970, the Family Services office of the St. Louis County Welfare department had received a letter from the mother stating that she had lost her job in St. Louis and that she had gone to rural Missouri, where her aunt lived, in order that she might seek employment, hoping that she could establish a home for herself and children. While seeking employment she helped her aunt in the operation of an "old folks' home." In March, 1970 she was working at a "drive-in" type restaurant, where she made $1.00 per hour. In her repeated letters and by telephone, she sought information about the children and the completion of a home study so that she might have the children. On June 8, 1970, she reported by telephone to the Family Services office that she had returned to St. Louis by bus because she had not found adequate employment. She would stay with her mother in St. Louis County. On June 10th she commenced factory work at $1.80 per hour. Monthly visits were arranged with the boys by the social workers at the mother's request. In June, 1970, she had employed an attorney to initiate proceedings for the return of the children. By August 2, 1970, she had rented an apartment but it *721 had only two rooms and was inadequate for her needs. She continued to see the children at intervals of about one month, which had been recommended by the Family Services office. In this she had sought more frequent visits, but the social worker had persuaded her to keep them at monthly intervals. Just before the hearing, the mother, then making $88.00 per week, had rented a room and the use of the remainder of a house occupied by a fellow employee, to care for her children.
The father, address unknown at the time of this hearing, had previously been ordered to support the children. There had been no order directed to the mother and no request for support had been made to her. She, however, had purchased toys and clothing for them. There was no doubt that their basic needs had been supplied from public funds. But at the same time the mother was doing what she could and, it appeared during the year before the filing of the petitions, had improved her position to supply essentials for the children. Her goal was to place herself financially where she might house them and take care of them. This was the motivation to cause her to go to her aunt's place in the countryside and then return to seek better paying employment in St. Louis.
No challenge was made as to her conduct. Her housekeeping standards were good. No question was raised as to her morality. She was not charged with abusing the children. The reasons advanced by a social worker to terminate the parental rights of the mother was the doubt of the worker as to the mother's ability to provide "the structure and the nutriments and the emotional stability that would be required for a stable home for these children." Much of this conclusion seems to have arisen from the social workers' observations that at the time of the visits the mother did not initiate play with the children, but would quietly watch them. The workers would suggest activities on these occasions. The mother was described as a shy woman by some of the witnesses. Obviously, it would be difficult for her to display a great amount of emotion before comparative strangers. It might further estrange little boys who were not used to being in the company of their mother, to have her become too involved in the direction of their play, in a forced attempt to win their affections.
We agree with appellant that the evidence failed to support the charges made and the judgments of the court. In re Taylor, supra, Mo.App., 419 S.W.2d 473. Accordingly, the judgments terminating the parental rights of the mother as to the minor children in both cases before us on appeal are reversed.
PER CURIAM:
The foregoing opinion by Weier, J., a commissioner when the cases were submitted to the Court, is adopted as the opinion of the Court. Accordingly, the judgments terminating the parental rights of the mother as to the minor children in both cases before us on appeal are reversed.
DOWD, Acting C. J., and VERNON W. MEYER, and ROBERT LEE CAMPBELL, Special Judges, concur.
NOTES
[1] All statutory references are to RSMo 1969, V.A.M.S.