483 S.W.2d 795 (1972)
In the Interest of M. J. M., also known as M. M., a child.
M. Q. M., also known as M. A. B., Appellant,
v.
Ralph L. SMITH, Juvenile Officer of the Juvenile Court of the County of St. Louis, Respondent.
No. 34332.
Missouri Court of Appeals, St. Louis District, Division One.
July 25, 1972.
*796 Shaw & Howlett, Charles M. Shaw, Keith W. Hazelwood, Clayton, for appellant.
Harold E. Scheppner, Jr., Clayton, Guardian ad litem for M. M., a child.
Corinne R. Goodman, Miriam Bricker, Clayton, for respondent.
WEIER, Judge.
M. A. B. appeals from an order of the Juvenile Court of the County of St. Louis, Missouri, terminating her parental rights to her natural child, M. J. M. This order was issued pursuant to Sections 211.441-211.511, RSMo 1969, V.A.M.S., and is based upon the juvenile judge's conclusion of facts "that it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition herein that said adult natural mother has abandoned said child and has willfully, substantially and continuously neglected said child and has refused to give the child necessary care and protection."
The child was born in wedlock on June 19, 1964. Her natural father deserted the household five months before she was born. There is one other child by this marriage, a boy born in 1963. The appellant has since remarried, having one child by her present marriage.
The St. Louis County Welfare Office obtained custody of the minor on August 20, 1969. This followed voluntary permission by the mother at the recommendation of the Washington University Child Guidance Center. Prior to this the child had been far from normal in her behavior. She would not mind and was always doing mischievous things. The frustration of the mother in being unable to effectively discipline the child created a fear in the mother of doing physical harm to her daughter. The arrangements for foster care were to be temporary so that both mother and child might receive separate psychiatric treatment. The appellant's other two children apparently were not a source of conflict *797 or tension and remained in the household. The Juvenile Court placed the child and arranged for her psychiatric treatment at the Washington University Child Guidance Clinic. A case worker at St. Louis Family Services was assigned to attend to the details of this treatment, and to supervise contacts between the natural mother and the child during the period of foster care, as well as to handle any other matters which might arise.
Two factors changed the atmosphere of the case and created hostility between the mother and the St. Louis Family Services: The psychiatrist treating the child developed and subsequently conveyed to the mother the impression that because of the "damage" already done to the child, it would be unwise to ever return her to her natural home to live; and the mother developed a hostile attitude toward the social worker attached to the case. These factors are somewhat interrelated. The psychiatrist recommended that any parent-child contacts be conducted only under supervised conditions. The social worker was in the position most susceptible to being blamed for these policies.
The pertinent section of the statutes setting forth the grounds for terminating parental rights is Section 211.441, RSMo 1969, V.A.M.S.:
"1. The juvenile court may, upon petition filed as provided in other cases of children coming under the jurisdiction of the court, terminate all rights of parents to a child when it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:
* * * * * *
"(2) When it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition
"(a) The parents have abandoned the child;
"(b) The parents have willfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection;
* * *."
The termination petition alleged, and the court concluded, that the mother had neglected and abandoned her child. (Subsections (a) and (b), supra.) The facts must substantiate the findings by clear, cogent, and convincing evidence and the burden of proof at all times is on the person petitioning for the termination of parental rights. In re Taylor, Mo.App., 419 S.W.2d 473, 476. The language of Section 211.441 demonstrates the permanency of the parent-child relationship and the legislative desire to retain this primary right of the parent, absent extreme circumstances, specifically delineated by statute. Renfro v. Jackson County Juvenile Court, Mo.App., 369 S.W.2d 616, 621 [2-4]; In Interest of D___ J___ A___ v. Smith, Mo.App., 477 S.W.2d 718.
Abandonment has been defined several times in the context of parent-child relationship. In these definitions the grammar varies, but certain specific elements always appear. The parent must willfully give up the child and intend that this severance be of a permanent nature. In Interest of S. K. L. v. Smith, Mo.App., 480 S.W.2d 119, 124[6]. The facts failed to substantiate any abandonment whatsoever on the part of the mother. The evidence stands uncontradicted that all parties initially agreed the separation was to be of a temporary nature. When a determination was made that the child would be better off if never returned to the custody of the mother, the appellant did not concur. The prospective duration of the separation, even though it may be permanent, cannot be labeled willful, since the mother did not acquiesce in its permanence. She sought to have the child returned to her under psychiatric care which she and her present husband would furnish. One cannot accept *798 the social worker's definition of abandonment as "not seeking psychiatric help in trying to remedy the situation in her home * * *." Sociological theory and definitions cannot be used to dilute the strict language of the statute.
We turn to the charge of neglect. Neglect must be willful, substantial, and continuous or repeated to terminate parental rights. Section 211.441, sub. 1(2), (b), RSMo 1969, V.A.M.S.; In Interest of S. K. L. v. Smith, supra, Mo.App., 480 S.W.2d 119, 124[7]. Rules concerning sufficiency of evidence and burden of proof which apply to abandonment also apply to neglect. Because the mother did not have custody of the child, the scope of possible acts of neglect is somewhat limited. In In re Taylor, Mo.App., 419 S.W.2d 473, this Court stated, at 476: "The parents' physical power and their legal freedom to give care and support to their children while the latter were being held incommunicado under order of the court were non-existent. Under such circumstances, it cannot be said that the parents neglected the children or refused to give them care and protection." The issue of neglect in the case at bar then must be limited to the propriety and frequency of the parental visits. The hostility displayed during the visits was directed toward the social worker and not the child. The coldness and indifference the respondent alleged the mother displayed toward the child is not neglect within the purview of the statute. Concerning the frequency of the visits, the record indicates that the appellant visited with her daughter on three occasions during the one-year period preceding the filing of the neglect petition. She demanded regularly scheduled monthly visits. We must evaluate this evidence, together with the surrounding circumstances. It was a fact that during the same period she had been told she could see her child only when accompanied by a social worker. It was also true that Family Services was unwilling to forego their legal custody of the child at the mother's request and to return the child to the mother's custody. Under such circumstances, the infrequency of the visits is not clear, cogent and convincing evidence of willful neglect.
The respondent's evidence to the effect the mother was ordered by the court to pay $28.00 per month for the child's support, and, although financially able, refused to do so, cannot be considered neglect within the meaning of Section 211.441, subsection 1(1), (2) (b). Rather, allegations concerning a parent's failure to financially support his child must be based on sub-section (c) of that statute, and cannot be used as justification for terminating parental rights in accordance with its predecessor in order, sub-section (b). "The two things, * * * obviously were intended to provide for different situations; otherwise, there was no reason for providing for either contingency in the statute." In re C., C., and C., Mo.App., 380 S.W.2d 510, 515.
Respondent, however, asserts that it is in the best interest of the child to terminate parental rights. All the medical evidence in the transcript indicates that the child was emotionally disturbed and that the best interests of the child would be to keep her in foster care, as opposed to returning her to her natural home. However, the best interests of the child constitute only one general requirement of the statute. The statute also requires the respondent to show specific grounds,in this case the pleaded grounds of abandonment or neglect. Since there must be strict and literal compliance with the statutory requirements, (In re C___, Mo.App., 468 S.W.2d 689, 691[1]), we cannot consider the best interests of the child as sufficient justification to terminate the appellant's parental rights. In Interest of S. K. L. v. Smith, Mo.App., 480 S.W.2d 119, 125[11].
Because the charges of abandonment and neglect have not been supported by clear, cogent and convincing evidence, the juvenile *799 court erred in terminating parental rights. The judgment is therefore reversed.
BRADY, C. J., and CLEMENS, J., concur.