**In the interest of T. H. and T. H., Children under Seventeen (17) years of age. Imogene CRAWFORD, Appellant,**

**v.**

**Joel R. AMBELANG, Juvenile Officer of St. Charles County, Respondent.**

**No. 34913.**

Missouri Court of Appeals,
St. Louis District,
Division One.

June 26, 1973.

Niedner, Moerschel, Nack & Ahlheim, Daniel E. Nack, St. Charles, for appellant.

Robert M. Wohler, Asst. Pros. Atty., St. Charles, for respondent.

WEIER, Judge.

From a judgment of the Juvenile Court terminating the parental rights of the mother and father to twin girls, the mother has appealed. The petition of the juvenile officer alleged abandonment of the children under the provisions of § 211.441, RSMo 1969, V.A.M.S. The court in its

judgment determined that the parents had abandoned the children for more than one year before the filing of the petition and ordered the termination of parental rights based upon this ground. The mother now challenges the court's judgment as being unsupported by the evidence and particularly by clear, cogent and convincing evidence as required by the statute.

■ As we have previously said: "Proceedings under Section 211.441 are of the utmost gravity. They contemplate a complete and final severance of all legal rights, privileges, duties and obligations between parent and child, with the prospective replacement of the natural by an adoptive parent or perhaps a guardian. This power given the juvenile court is purely statutory. Without such legislation, the power would not exist. Accordingly, the terms of the statute must be strictly applied. * * * As directed by Section 211.501, it is only after the court finds one of the conditions listed in Section 211.441 exists, and then only when supported by clear, cogent and convincing evidence, that it may proceed to terminate parental rights. As to this, whoever seeks to invoke the statute must carry the full burden of proof. * * *" (Citations omitted.) D—J—A— v. Smith, 477 S.W.2d 718, 720 [1, 2] (Mo.App.1972).

With this admonition in mind, we consider the essential facts. The mother gave birth to twin daughters, the children of her second husband, on August 24, 1962. Upon the mother's divorce from this father in 1966, the custody of the twins was awarded to the father. This provision of the divorce decree was modified in 1968 when the mother, who had since married another man, was granted custody of the two girls. Within a short time after the return of the children to the mother's custody, marital problems developed between her and the new husband which led to their separation. She thereupon placed the girls with their paternal grandmother. This elderly woman, in poor health, turned the children over to the Division of Welfare and subsequently refused to inform the mother as to their disposition or location. The Welfare office attempted to find the mother and eventually one of their letters reached her in Texas. There, on September 20, 1968, she wrote to the Welfare office stating that she could not provide them with a suitable home, that she would prefer to see them in a good home and would be willing to sign papers for their adoption. It was not until July, 1971 that the mother again evidenced some interest in the children when she responded to another inquiry. This time she indicated she was interested in seeing the children and arranged a number of appointments with the Welfare office. She met twice with the social worker handling her case, but failed to keep a scheduled appointment to see her daughters, allegedly due to a lack of transportation. After September, 1971, she did not communicate further with the Welfare office. In January of 1972, the juvenile officer filed a petition to terminate the parental rights of both parents to their two children. It is from the judgment terminating these rights on the ground of abandonment that this appeal has been taken.

The trial court based its finding of abandonment on the appellant's letter expressing her consent to the adoption of her children, her subsequent failure to communicate with the Welfare Division concerning her children, and her failure to keep any appointments to visit the girls. This, the court concluded, constituted an original abandonment and thereafter there was a continuation of this abandonment "for one year and more immediately prior to the filing of the * * * Petition". In addition, the court determined that it would be to the best interest of the children that the natural parental rights of the mother and father be terminated.

■ As defined in numerous Missouri decisions, abandonment implies a willful, positive act such as deserting the child. S. K. L. v. Smith, 480 S.W.2d 119, 124

(Mo.App.1972). "The parent must willfully give up the child and intend that this severance be of a permanent nature." In re M. J. M., 483 S.W.2d 795, 797 (Mo.App. 1972). Appellant's letter of September, 1968 is certainly evidence of an intent to willfully give up the children. Moreover, the letter gives no indication that the appellant wished to give up her daughters only temporarily. Rather the contrary is indicated in that she thought they should be placed for adoption which would mean a permanent termination of her parental rights in the children. From the letter it would appear that there was a willful abandonment of the children in 1968 which was intended to be permanent in nature.

 The question then arises as to whether this abandonment was ever repented or terminated at a later time. It is true that abandonment or neglect may be repented and terminated. In re Adoption of J—, 396 S.W.2d 257, 262 (Mo.App. 1965). But abandonment, once established, continues until parental care and support are resumed. Application of Graham, 239 Mo.App. 1036, 199 S.W.2d 68, 74 (1946). Repentance of the abandonment may be determined by the actual or attempted exercise of parental rights and performance of parental duties following the abandonment. This case turns, then, on how the communications between appellant and the Welfare office in 1971 are to be interpreted. The trial court found that the mother's failure to meet with the children at any time during 1971 constituted a continuation of the abandonment. Appellant, on the other hand, contends that she did meet twice with the social worker assigned to her case and further explained her failure to keep appointments to see the girls or the social workers was due on one occasion to a misunderstanding concerning the time of the scheduled meeting, on one occasion to illness, and on other occasions to a lack of transportation from her home in St. Louis to the Welfare Division in St. Charles. If the court relied alone upon the evidence concerning the communications and activi-

ties of the mother and the Welfare office in 1971, the facts therein presented would not seem to be "clear, cogent and convincing evidence" of abandonment. Her apparent lack of effort to communicate and reestablish her relation as a mother with the children in 1971, however, combined with the original intent to abandon the children as disclosed in her letter written in 1968 would seem to establish sufficient evidence of abandonment to support the court's judgment.

Absent the mother's letter, the present case is essentially indistinguishable from a number of recent decisions by this court in which termination orders have been reversed for failure to establish either abandonment or willful neglect. See In re M. J. M., supra, 483 S.W.2d 795 (Mo.App. 1972); H. G. R. v. Smith, 483 S.W.2d 779 (Mo.App.1972); C. S. v. Smith, 483 S.W.2d 790 (Mo.App.1972), and S. K. L. v. Smith, supra, 480 S.W.2d 119 (Mo.App.1972). In the latter three cases there was no contact between the parent and child for the statutory year, where the child in each case had been placed in foster care. But the failure to meet with the children was not held to constitute an abandonment in any of the cases. In H. G. R. v. Smith, supra, the mother did not even request visitation, and yet this was not held to constitute the positive act of abandonment. (483 S.W.2d at 780) In the instant case, the mother at least indicated on several occasions that she would like to see her children and made some effort to contact the Welfare Division toward this end. The facts here presented, however, are distinguishable from these prior cases. Here the mother's conduct in failing to meet with her daughters, which in itself may have been essentially ambiguous as to intent, was preceded by a clear statement of her intent to give them up followed by over two and a half years in which she made no real effort to reestablish her position as their mother. It was only after the Welfare office had written her that she responded and indicated a renewed interest in her two daugh-

ters. Long periods of disinterest and the history of her broken appointments not only with the welfare workers, but also with her children after her renewed interest could not in our opinion be interpreted to be repentance or termination of the abandonment which she had indicated in her letter of September, 1968. The trial court was not persuaded that the subsequent attempt on the part of the mother to communicate with the Welfare office and the children was sufficient to constitute a repenting of the earlier abandonment. And we, at this time, cannot conclude this judgment was clearly erroneous. Rule 73.-01(d), V.A.M.R.

The judgment is affirmed.

DOWD, C. J., and McMILLIAN, J., concur.