**In the Interest of J. A. H., a Minor,**

**STATE of Missouri, Respondent,**

**v.**

**D. W. H. and S. H., his wife, Appellants.**

**No. 11051.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 10, 1980.

John E. Kelly, Springfield, for appellants.

Michael Baker, Springfield, for respondent.

FLANIGAN, Chief Judge.

On June 24, 1977, the juvenile officer of Christian County filed in the juvenile court of that county a petition for termination of

parental rights pursuant to the procedure prescribed by § 211.441–§ 211.511.[1] Those statutes were repealed in 1978 and 11 new sections relating to the subject of termination of parental rights were enacted in lieu thereof. One of the new sections, § 211.487, par. 2, RSMo 1978, reads: "In any action for termination of parental rights pending prior to August 13, 1978, the law in effect at the time of the filing of the petition for termination of parental rights shall govern the hearing on such petition and any appeal therefrom." Thus the repealed statutes govern this appeal.

The petition sought to terminate the rights of the father, D, and the mother S, to their daughter, J. Following the hearing on the petition the court terminated all rights of both parents. The parents appeal.

The reasons assigned in the petition for the termination of parental rights were abandonment, § 211.441, par. 1(2)(a), neglect, § 211.441, par. 1(2)(b), and parental unfitness, § 211.441, par. 1(2)(d). The reasons were couched in the statutory language set forth below.[2]

"Proceedings under Section 211.441 are of the utmost gravity. They contemplate a complete and final severance of all legal rights, privileges, duties and obligations between parent and child, with the prospective replacement of the natural by an adoptive parent or perhaps a guardian. This power given the juvenile court is purely statutory. Without such legislation, the power would not exist. Accordingly, the terms of the statute must be strictly applied. * * * As directed by Section 211.501, it is only after the court finds one of the conditions listed in Section 211.441 exists, and then only when supported by clear, cogent and convincing evidence, that it may proceed to terminate parental rights. As to this, whoever seeks to invoke the statute must carry the full burden of proof. * * *" (Citations omitted.) D_____ J_____ A_____ v. Smith, 477 S.W.2d 718, 720[1, 2] (Mo.App.1972).

A general finding that termination of parental rights is in the best interest of a child, in and of itself, is not sufficient cause to support an order of termination. In re Trapp, 528 S.W.2d 489, 494[1] (Mo. App.1975). Section 211.441 requires petitioner to prove one or more of the specific statutory grounds. In re M. J. M., 483 S.W.2d 795, 798[11, 12] (Mo.App.1972).

The petition, in addition to assigning the three reasons for termination previously mentioned, assigned a fourth reason. The latter need not be considered because it is not one of the grounds specified in § 211.-441.

The order of the trial court terminating the parental rights of D was based upon findings of neglect and parental unfitness. The termination of the parental rights of S was based upon a finding of parental unfitness. The trial court's order was not predicated upon a finding of abandonment by either parent and the brief of respondent (petitioner in the trial court) makes no attempt to justify the trial court's action on the ground of abandonment. In light of such authorities as T. H. v. Ambelang, 497 S.W.2d 210, 211[3] (Mo.App.1973) and In re

1. Unless otherwise indicated all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

2. "211.441. Court may terminate rights, when —consent, how established.—1. The juvenile court may, upon petition filed as provided in other cases of children coming under the jurisdiction of the court, terminate all rights of parents to a child when it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:

(2) When it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition

(a) The parents have abandoned the child;

(b) The parents have willfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection;

(d) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child;"

*M. J. M.*, supra, 483 S.W.2d at 797[3, 4], this court's examination of the record discloses that it would not support a finding of abandonment.

The disposition of this appeal hinges upon whether there was "clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition," June 24, 1977, either parent was guilty of neglect, § 211.441, par. 1(2)(b), or parental unfitness, § 211.441, par. 1(2)(d). The facts which are material to those two grounds are set forth chronologically.

D and S were married in May 1974 when D was 19 and S was 18.

### 1975

S, then four months pregnant with J, separated from D and moved in with the Cole family in Kansas City, Kansas. S had previously lived with the Coles as a foster child. After the separation D lived with another woman for several months.

### 1976

On January 5 J was born. On February 8 S left the Cole home and resumed living with D in Kansas City, Missouri. On February 9, through Kansas juvenile authorities, J was placed in a foster home.

On March 29 a Kansas City social worker filed an investigative report. On March 30 D and S were given custody of J. They were then living in an apartment in Kansas City and their "housekeeping standards were adequate."

On May 9 D took J to Christian County, Missouri, and left her with D's mother. J's clothes were dirty and her "bottom was raw" but J had no major health problems.

On May 11 D's mother delivered J to the juvenile authorities in Christian County and on the same day the juvenile officer filed a petition in the Juvenile Court of Christian County (Case No. 5846) asking that court to assume jurisdiction of J. The petition was based upon § 211.031, par. 1(1)(a), dealing with parental neglect.[3] Pursuant to court order J was placed with foster parents.

During the summer, while D and S were living together in Springfield, D visited J four times and D and S visited J two or three times. In September D and S moved to Columbia. In October D and S visited J.

### 1977

In January D and S separated and S moved to Kansas City. On February 8 S gave birth to a son, K. According to S, D was K's father.

On March 11, in Case 5846, the court found J to be neglected, within the meaning of § 211.031, and ordered that she be made a ward of the court with custody in the Division of Family Services.

On June 24 the instant petition to terminate was filed (Case No. 11).

In September D attempted to see J.

In October D attempted to see J and told D's mother that "the trial was coming up" and he hoped she would help D obtain custody of J.

On November 10 a hearing was held in the termination proceeding. D and S did not appear in person but did appear by counsel. The juvenile officer appeared by counsel. Evidence was taken and the trial was recessed.

On December 9 the trial was resumed. S was present with her attorney but D was not.

### 1978

On April 4, in Case No. 11, the court entered its decree terminating the parental rights of D and S with respect to J.

\*   \*   \*

Further evidence presented in the trial court showed that D is emotionally disturbed and has never been regularly employed. He is a liar. He had been an

---

3. See *State ex rel. Brault v. Kyser*, 562 S.W.2d 172, 174 (Mo.App.1978) which contrasts a proceeding pertaining to a neglected child under § 211.031 with a proceeding for termination of parental rights under §§ 211.441–211.511. As there pointed out, the proceedings have "fundamentally different" purposes and there is a "vast difference" between them.

inpatient at several mental hospitals. Pursuant to court order D underwent a psychiatric examination. The psychiatrist diagnosed D's condition as "chronic undifferentiated schizophrenia, under remission," and stated that the prognosis was "guarded."

S is below average in mental ability and at the time of the hearing was drawing a social security benefit by reason of her "mental deficiency." She, too, underwent psychiatric examination. The diagnosis was "mental retardation borderline; adjustment reaction of adult life." The prognosis was "guarded."

The marriage of S and D was described as a "stormy one with numerous separations." A social worker offered the opinion that S and D were unable to maintain a stable home for J. Between May 11, 1976, and December 1977, when the trial ended, J was in the custody of foster parents in Christian County, Missouri, and during that period neither D nor S made any financial contribution to the support of J. D did write one $25 check for that purpose but the check was returned for insufficient funds.

J is a normal child.

Appellate review of this nonjury proceeding is governed by Rule 73.01, par. 3, as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The initial contention of appellants is that the evidence is insufficient to support the finding of the trial court that D was guilty of neglect within the meaning of § 211.441, par. 1(2)(b) set forth in footnote 2.

"Willful neglect within the meaning of § 211.441.1(2)(b) . . . excludes acts which occur because of events beyond control and not the fault of parents . . .;

the neglect alleged, in order to be willful, must be intentional, deliberate, and without just cause or excuse . . .; and where the parents' physical power and legal freedom to give care and support to their children are restricted by court order placing the children in the custody of others, the scope of acts of neglect is limited . . ." *In re Trapp*, supra, 528 S.W.2d at 495[5, 6]. (Citing authorities.)

". . . [T]he term 'neglect' is a general and a negative proposition meaning simply the failure to perform the duty with which a parent is charged by the law and by conscience." *S. K. L. v. Smith*, 480 S.W.2d 119, 124[7, 8] (Mo.App.1972).

In *In re M. J. M.*, 483 S.W.2d 795 (Mo.App.1972), the court dealt with a charge of neglect in a situation where the parent did not have custody of the child and the latter was in a foster home. The court stated, at 798, "The issue of neglect in the case at bar . . . must be limited to the propriety and frequency of the parental visits." There the record showed that the parent visited the child three times during the 12 months preceding the filing of the petition and the parent had requested monthly visits. The court held that there was no clear, cogent and convincing evidence of willful neglect.

In the case at bar J was in a foster home[4] throughout the year immediately preceding the filing of the petition to terminate. During that year D visited J eight or nine times. After the petition was filed D attempted to see J and expressed the hope to his mother that he could obtain J's custody. Although D did not appear in person at the hearing, he appeared by counsel. The record reflects that D has mental problems

---

4. In *C. S. v. Smith*, 483 S.W.2d 790 (Mo.App. 1972) the Eastern District of this court discussed the situation where a child had been taken from his natural parents and placed in a foster home under an order of the juvenile court. The court pointed out that the net effect of the change of custody is to place the parents in the position of having to maintain contact with the child through third persons—the agency personnel. Many of these parents, said the court, do not understand that they still have the right to see their children or how to exercise that right.

The court said that in termination proceedings based on neglect or abandonment the petitioner must show that the natural parents knew of their visitation rights; that the juvenile authorities should inform the parents of "their obligation to support their child who is in foster care" and "the procedures to be followed and the persons to be contacted in order to maintain a relationship with their child."

for which he has been hospitalized frequently. His marriage to S has been beset with difficulties.

J has been in the custody of D (and S) only for a brief period, primarily from March 29, 1976, to May 9 of the same year when D delivered J to D's mother. There was some evidence that J had been receiving improper care in that her clothes were dirty and her "bottom was raw." Whether that situation was attributable to D or to S or to them jointly does not appear. What does appear is that D was sufficiently interested in J's welfare that he took her to Christian County and left her with D's mother.

■ It may well be that D is not a perfect father. The record, however, does not contain evidence justifying a finding of neglect on the part of D. The record is insufficient to support a finding that S was guilty of statutory neglect and, indeed, the trial court made no such finding.

While J was in foster care, D made no financial contribution to her support, although he did write one $25 check which did not clear. However, it is pointed out in *In re M. J. M.*, supra, 483 S.W.2d at 798[9, 10] that a parent's failure to provide financial support for his child must be based on subsec. (c) of § 211.441, par. 1(2), which was not pleaded in the instant action, and cannot be based upon subsec. (b) which deals with neglect.

The trial court erred in finding that D was guilty of statutory neglect.

■ Appellants next contend that the record does not support the finding of the trial court that D and S were unfit parents within the meaning of § 211.441, par. 1(2)(d). That statute, in addition to specifying the types of misconduct within its ambit, requires that the court find that the conduct "be seriously detrimental to the health, morals, or well-being of the child."

There was vague testimony, solely relied on by respondent to support the finding of unfitness, that both D and S engaged in extramarital affairs. There was, however, no testimony that J was present during or affected by any of the illicit amours.

D at one time was a habitual user of narcotic drugs but the testimony was that he had "kicked" the habit prior to the birth of J. In February 1976, while J was not in their custody, D and S shared a small apartment with another man and woman. Whether that situation entailed improper conduct is not shown and in any event it could hardly be seriously detrimental to the absent J. D is a liar but that frailty is not one condemned by the statute.

At the hearing S stated in her opinion that D should lose his parental rights but that testimony, standing alone, has no significance in the absence of factual support for a statutory ground. There was testimony that in May 1976 D threatened S if she did not let him take J to Christian County. An unexecuted threat of that nature does not fall within the conduct statutorily proscribed.

This court holds that the record is insufficient to support a finding of parental unfitness, within the meaning of § 211.441, par. 1(2)(d), on the part of either D or S. It follows that the order terminating the parental rights of D and S must be reversed.

The trial court consolidated Case No. 5846 and Case No. 11. Only the judgment in Case No. 11, the termination proceeding, is involved in this appeal and affected by the mandate of this court.

The judgment in Case No. 11 is reversed.

TITUS, P. J., and GREENE and PREWITT, JJ., concur.