In the Matter of the ADOPTION OF G——.

W. M. A. and V. L. A., Petitioners-Respondents,

v.

B. D. G., Appellant.

No. 11227.

Missouri Court of Appeals, Southern District, Division One.

June 23, 1981.

William E. Gladden, Houston, for petitioners-respondents.

Nicholas R. Fiorella, Springfield, for appellant.

TITUS, Judge.

On March 18, 1978, the natural mother of an eleven and a half year old boy and her husband jointly petitioned the Circuit Court of Texas County to adopt the child. The boy's father filed an "Answer to Petition for Adoption and Denial of Consent to Adoption by Natural Parent." A trial was held and the decree allowing the adoption and changing the child's surname to that of petitioners was entered November 21, 1978. Nine days later the natural father filed his notice of appeal and, in writing, ordered from the court reporter a transcript on appeal to be prepared. Particularly in a case of this kind where an expeditious determination of the appeal is desirable for the benefit of the involved parties and the cause of justice, it is extremely unfortunate that the 273-page transcript on appeal was not filed here until April 18, 1980, or one year and five months after appellant's order therefor was properly made and filed. At this writing, the boy is nearing his 15th birthday.

In this appeal we are especially concerned with the provisions of two of our statutes, RSMo 1978. Sec. 453.040—"The [written] consent [of the natural parents] of the adoption of a child is not required of . . . (4) A parent who has for a period of at least one year immediately prior to the filing of the petition for adoption, either willfully abandoned the child or willfully neglected to provide him with proper care and maintenance." Sec. 453.030—"1. In all cases the approval of the court of the adoption shall be required and such approval shall be given or withheld as the welfare of the person sought to be adopted may, in the opinion of the court, demand." A finding that there was either willful abandonment or willful neglect during the period specified by § 453.040(4), is first necessary to bestow upon the trial court jurisdiction to act. If such jurisdiction is found to exist, then § 453.030–1 leaves the paramount question of the welfare of the child sought to be

adopted for determination by the court. *In re Adoption of Rule*, 435 S.W.2d 35, 41 (Mo.App.1968).

The mother and father (the latter then in the U.S. Army) were divorced in December of 1969 when their child, born August 13, 1966, was three years old. By the divorce decree, which apparently has never been changed, the mother was awarded principal care and custody of the boy and $20 per month child support. Immediately after the divorce the father went to Korea where he remained, except for a short stateside furlough in August 1970, until his honorable discharge in February 1971. The mother married her present husband and joint petitioner in April 1970. A girl, 5 years old at trial time, was born of the marriage. The father wed his present wife in February 1972 and, at trial time in August 1978, two children had been born of that union. Except for testimony anent the father's alleged abandonment of the child or his neglect to provide care and maintenance and the mother's sometimes early noncooperativeness in letting the father see or have custody of the child, neither parent undertook to assail the character or morals of the other. Likewise, no evidence was tendered which even suggested any unfitness on the part of the mother's husband and joint petitioner to qualify as an adoptive parent.

In deciding this appeal we are required to defer to the trial court's apparent choice between conflicting testimony and accounts of conversations and events which depends upon the credibility of the witnesses. Rule 73.01(3)(b), V.A.M.R.; *Young v. Young*, 588 S.W.2d 207, 210[3] (Mo.App.1979). We bear this in mind while recasting the evidence.

Following the 1969 divorce, the father sent the decreed $20 monthly child support payments to his sister who, in turn and as directed, sent them on via checks made payable to the three-year-old boy. No child support payments were ever made directly to the mother. The father was discharged from the Army in February 1971 and discontinued the child support payments two months thereafter. No support payments in the fashion described or otherwise were made subsequent to April 1971 and the stepfather has provided all of the support and maintenance required by the boy since that time. The father's explanation for not making any support payments after April 1971 was "Because I was told they didn't want my so-and-so money. ... I was also told that the boy was not mine, he was theirs." This was denied by the mother.

In April 1971 the stepfather asked the father to help with the expenses to be incurred as the result of a contemplated hernia operation of the boy. The stepfather said the father refused "because that's what the $20.00 a month was supposed to take care of;" the father explained his admitted refusal by saying the stepfather had insurance to defray the expenses of the surgery. On the day of the operation the father went to the hospital and an unpleasantness ensued among the adults. Thereafter the father, according to the mother and stepfather, did not undertake to see the boy until October 1971. The father claimed his noncontact with the boy during that period was due to the mother's refusals to let him see the child.

Accompanied by his girl friend, now wife, the father went to the home of the mother in October 1971 near 9 p.m. when the boy was abed asleep. According to the stepfather and the mother, the father offered to pay them $20 if he could have the boy for 30 days. Permission was refused and the mother told the father she didn't want his money. By this time the boy was attending school kindergarten "Half a day, every day." Thereafter, except for calling the boy (who lived in the state of Texas from July 1974 to November 1977), in 1976 to tell him of his paternal grandmother's death, sending him birthday cards or gifts each year from 1971 through 1975 and taking him Christmas presents at school in 1971, 1972 and 1973, the father had no contact with the boy and had not seen him subsequent to December 1973 until immediately before the adoption action was commenced in March 1978, when the father, apparently per chance, saw the boy two or three times at school basketball games. The father tes-

tified that in May 1973 (admittedly unknown to the mother, son, and stepfather) he had opened a savings account payable to himself, his present wife and the boy to atone for the $20 per month decretal child support payments he had never paid to the child's mother. At trial time this account amounted to $2,075.57 but was never made available to the mother to whom child support payments had been awarded.

The father's two points relied on in this appeal are: "I. The trial court erred to the prejudice of appellant in granting respondents' petition for adoption for the reason that the trial court did not have jurisdiction to act upon said petition for adoption or grant said petition without the natural father's consent because the evidence adduced at trial did not show any willful abandonment or neglect of the child as required by Section 453.040(4) RSMo 1969. II. Even in the event the trial court had sufficient jurisdiction to act upon respondents' petition for adoption, the trial court erred to the prejudice of appellant in granting respondents' petition for adoption for the reason that the record is devoid of any evidence that would show it was in the child's best interest that the adoption be granted."

These points relied on are written in complete disregard of the mandatory requirements of Rule 84.04(d), V.A.M.R., and preserve nothing for appellate review. Point relied on I does not attempt to demonstrate "wherein and why" the evidence adduced did not show any willful abandonment or neglect of the child as required by the cited statute. Point relied on II does not undertake to explain "wherein and why" appellant is contending the record is devoid of evidence showing the adoption was in the child's best interest. Nevertheless, because of the nature of the case, the patent infractions of the rule's requirements will be ignored.

Albeit the conduct of a parent evidencing an intent or mental attitude constituting willful neglect or abandonment must have occurred during the year immediately prior to the filing of the adoption petition per § 453.040(4), evidence of that parent's conduct before or after the statutory period may be considered in deciding the purpose and intent of the parent. *Adoption of R.A.B. v. R.A.B.*, 562 S.W.2d 356, 357–358[2–4] (Mo. banc 1978). According to the testimony obviously accepted by the trial court and as the record supports, the father did not attempt to obtain custody of the boy subsequent to October 1971 (after last having seen him in April 1971) and did not see him after Christmas 1973 except for two or three happenstance encounters at basketball games before the adoption petition was filed in March 1978. Save for the single 1976 telephone call to the boy in Texas following his grandmother's death, the father had not communicated with the child by gifts or otherwise, following Christmas of 1975. Assuming $20 *a month* may be considered as any kind of child support in this day and age, no such decretal payments had ever been made to the mother and such payments which were directly made to the two to five year old child halted in April 1971 or seven years before the adoption action was commenced. Clandestine payments made into the undisclosed bank account in the names of the father, his present wife and the child, as claimed by the father, hardly atone for the fact that no decretal support payments had ever been made to the mother or that the boy had never, directly or indirectly, received any benefits therefrom. Without suffering the legal consequences therefor, a parent should not be permitted to contemptuously disregard the decree of a court regarding child support payments. Neither should he be allowed to treat a child as a chattel which he may have, see or communicate with upon caprice or whim while at the same time forsaking his legal duties and obligations of supporting and caring for the infant. *In re Adoption of S.*, 581 S.W.2d 113, 116[2] (Mo. App.1979). Because of the facts just recited and those previously recounted, we conclude the trial court did not err in finding that the father had, for a period of at least one year immediately prior to filing the petition for adoption, willfully abandoned the child and willfully neglected to provide him with proper care and maintenance.

There was substantial evidence to support the finding, which neither erroneously declared nor applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ Having determined there was willful abandonment and neglect by the father during the period specified by § 453.040(4), we, as did the trial tribunal, conclude the court nisi had jurisdiction to act in the cause. Consequently, the remaining question is whether the interests of the boy are best served in terminating the natural father's parental rights by a decree of adoption. § 453.030-1. In our opinion there was substantial evidence of the trial court's findings in this respect.

For more than 8 years prior to the hearing in this matter, the boy had been living in a wholesome, stable environment with his mother and stepfather. During the last 5 years of that relationship, the boy had also been living in the home with his half sister. The stepfather treats and regards the boy as his own son and has provided him with the necessary and more than adequate support, maintenance, care and affection since marrying the boy's mother. Apparently enjoying good health, the boy is being given every opportunity towards receiving an education in a good and wholesome home environment. At an in-chambers interview following the formal trial, the boy acknowledged to the court he had given thought to the matter of adoption, understood the legal consequences thereof and would like to be adopted by the stepfather. Cf. *Lambertus v. Santino*, 608 S.W.2d 502, 507[5] (Mo.App.1980).

The trial court observed and heard all of the witnesses produced, including the petitioners herein and the natural father, and had an opportunity, far better than ours, to assess their appearance, sincerity, character and demeanor. Deferring to the findings of the trial court declaring "that it would be to the best welfare of said child that said adoption be granted," and decreeing the adoption by petitioners, which findings and judgment are based upon substantial and in

most instances uncontradicted evidence, the judgment is affirmed.

GREENE, P. J., and FLANIGAN, J., concur.