**In re the ADOPTION OF M.D.L. L.R.C. and P.D.C., Petitioners-Respondents,**

v.

**D.L., Defendant-Appellant.**

**No. WD 35537.**

Missouri Court of Appeals, Western District.

Dec. 18, 1984.

Walter R. Simpson, Kansas City, for defendant-appellant.

Stuart J. Newman, Kansas City, for petitioners-respondents.

Before PRITCHARD, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

Petitioners-respondents sought adoption of M.D.L. The natural mother consented to the adoption but the natural father D.L., an inmate at Central Missouri Correctional Center in Jefferson City, Missouri, objected.

In a very complete finding the trial court held that the father had wilfully abandoned and neglected the child for more than six months prior to the filing of the adoption. The court also found D.L. had wilfully failed to maintain a parent-child relationship with M.D.L. from October, 1981, through September 29, 1983. The court further found that the petitioners-respondents are suitable adoptive parents and that it is in the best interest of M.D.L. that the adoption take place.

Appellant, D.L., assigns two points of error: (1) that there was no substantial evidence that he wilfully abandoned or wilfully substantially and continuously neglected to provide the child with care and protection for six months prior to the petition being filed, and (2) that the appellant had a continuous intent to maintain his parental relationship with his daughter and the judgment was against the weight of the evidence which established this claim.

On July 10, 1981, D.L. was convicted of "stealing by physically taking from a person" and was sentenced to the Missouri Department of Corrections for seven years. He was placed on parole December 21, 1982. D.L. was in Kansas City during the thirty days he was on parole. First he lived at a NARA Residential Treatment Center, 712 East Linwood, Kansas City, Missouri. He stayed at the half-way house seven days and absconded. D.L. was subsequently arrested for parole violation on January 22, 1983, and administratively revoked March 23, 1983.

According to Judy Chase, Assistant District Supervisor of the Missouri State Department of Probation and Parole, "He had at least three criminal convictions prior to that time, and at least three traffic matters." Subsequent interrogation of the witness revealed only two prior convictions, one for assault on a police officer and the other for destruction of property.

Tom Schroeder, a case worker with Missouri Division of Family Services testified that M.D.L. was born November 5, 1978, and she was first detained by the Division of Family Services August 15, 1980. She was adjudicated and placed in foster care October 16, 1980. On April 3, 1982, she was transferred to foster care with the petitioners.

Petitioners filed for adoption on February 15, 1983; six months prior would have been August 15, 1982. Schroeder testified that during the six month period, he had no contact with appellant D.L., that D.L. sent no money to the Department of Family Services or directly to M.D.L., and that he sent no gifts, cards or letters to M.D.L. In

fact, the last visit D.L. made with M.D.L. according to the Department of Family Services records was January 16, 1981. D.L. did send her a birthday card received by Department of Family Services on November 2, 1981, and a Christmas gift for her on December 3, 1981. There were no letters or gifts since Christmas 1981. Since the filing of the petition February 15, 1983, D.L. made no effort to contact Department of Family Services or M.D.L.

Mr. Schroeder further testified on October 5, 1981, he sent D.L. a letter explaining who he was, how to reach him, his address, telephone number and a hand book for natural parents regarding their rights and responsibilities while his child was in foster care. D.L. was also informed:

> That he needed to write to us and ask about M.D.L.'s health and behavior and progress on a regular basis, and that he should write M.D.L. or send her cards on her birthday or holidays by addressing them to her in care of me. And that he should contribute to her support by—.
>
> . . . .

In whatever amount that he can manage. D.L. replied on October 12, 1981, that he could send no money but that he would send birthday cards and presents.

Schroeder wrote D.L. on October 19, 1981, and informed him about M.D.L. and D.L. responded October 25, 1981. On December 8, 1981, Division of Family Services advised D.L. they had received and forwarded to M.D.L. the birthday card and that the Christmas present would be given to her in two weeks. On April 2, 1982, Division of Family Services sent D.L. a letter summarizing the previous events to which they received no response. On August 5, 1982, the Department of Family Services again wrote D.L. advising him they expected him to contact them once a month to inquire about M.D.L. There was no response. On November 9, 1982, Department of Family Services wrote D.L. again advising him that they "were attempting to make some permanent plans for M.D.L. and needed to know what his present plans for her were. And I asked him to write me." He did not respond.

According to Schroeder, D.L. made no contact with him or the Department of Family Services during the thirty days he was on parole in the Kansas City area, in fact, Schroeder was not aware of the parole until March, 1983.

Mr. Schroeder of the Division of Family Services recommended final adoption custody in petitioners and that the court find abandonment or neglect. The Division of Family Services advised that M.D.L. has made a very good adjustment in that home.

Sharon Anderson, a social service worker in foster care of the Missouri Division of Family Services was assigned as the foster care worker for M.D.L. and had been on the case since October, 1981. She testified D.L. had made no contact with her regarding visits with M.D.L. and he had not visited M.D.L. since she was assigned the case. She received no gifts, cards or letters from D.L. to be given to M.D.L. from August 15, 1982, to February 15, 1983. Anderson stated that M.D.L. had made a good adjustment and it would be in M.D.L.'s best interest that the petitioners be granted the adoption.

Petitioner L.R.C. testified there had been no visitation between D.L. and M.D.L. while M.D.L. had been in their custody since April, 1982, that there had been no letters, cards, presents, or money, sent to M.D.L. directly or through the Division of Family Services from D.L.

■ This court reviews both the law and the evidence and will defer to the trial court the opportunity to judge the credibility of witnesses and choose between conflicting testimony. *Matter of Adoption of G.*, 618 S.W.2d 462, 464 (Mo.App.1981). Rule 73.01(c)(3).

■ The decree of adoption is to be sustained unless there is no substantial evidence supporting it, it is against the weight of the evidence or it erroneously applies the law. *Matter of Adoption of Pearson*, 612 S.W.2d 30, 31 (Mo.App.1981).

■ Each case must be judged on its own unique set of facts, *S.C.H. v. C.W.H.*, 587 S.W.2d 945, 947 (Mo.App.1979), and only after determining there has been a

wilful abandonment or wilful neglect will the issue of the child's best interest be reached. *In re Adoption of W.B.L.*, 647 S.W.2d 531, 533–34 (Mo. banc 1983), citing *Adoption of R.A.B. v. R.A.B.*, 562 S.W.2d 356, 357 (Mo. banc 1978).

In order to constitute wilful neglect there must be more than evidence of a parent's failure to support. *S.C.H. v. C.W.H., supra.* Indeed, in the instant case the record is replete of D.L.'s failure to, in any fashion, be a father to his daughter, M.D.L. From Christmas 1981, to the day of the hearing in February, 1983, he had no contact with M.D.L., despite urgings from the Division of Family Services workers to write her, send her letters, cards or gifts.

Appellant was on furlough in late November and early December, 1982, and alleges he went to a hearing on M.D.L. but because he was concerned over his wife's boyfriend being present, he left before the hearing took place. He saw M.D.L. at this time but did not communicate with her.

On December 21, 1982, he was paroled and lived in the Kansas City area for thirty days at which time he was rearrested for parole violation. He acknowledges he made no effort either through the Division of Family Services, or directly, to contact his daughter. Such actions demonstrate an unconcern and total disregard for M.D.L.

Wilful neglect is a matter of intent and evidence of appellant's conduct either before or after the statutory period may be considered to determine his intent. *Adoption of R.A.B. v. R.A.B., supra*, at 358. In the instant case his actions speak much louder than do his protestations raised at trial. The record is one that he made. Despite his incarceration he did not follow the recommendations of the Division of Family Services regarding periodic letters, cards and gifts. He did not attempt a visit when home on parole. Clearly he has wilfully neglected and wilfully abandoned M.D.L.

The court in *In re Adoption of K.L.G.*, 639 S.W.2d 619, 626 (Mo.App.1982), cited by both parties touches upon incarceration and the severance of parental rights. The appellant offers the following from *K.L.G.*,

"It is generally held that such imprisonment does not per se constitute abandonment." He fails to cite the remainder of that paragraph which reads, "On the other hand, a majority of the decisions hold that under appropriate circumstances imprisonment may constitute abandonment." *K.L.G., supra*, at 626.

In the instant case D.L. was contacted by the Division of Family Services and given directions on how to keep contact with M.D.L. For a period of time he followed their directions. However, the evidence is overwhelmingly clear, cogent and convincing that D.L. evidenced intent to and did wilfully abandon and wilfully neglect M.D.L.

After finding that D.L. had wilfully abandoned and neglected M.D.L. the court did not err in decreeing the adoption; the evidence was clear it was in the best interest of M.D.L. to be adopted by the petitioners.

The record demonstrates that petitioners have a stable two-person home with a healthy loving environment in which to raise M.D.L., that close family ties now exist between members of the family and M.D.L. and vice versa, and that the best interest of M.D.L. will be served by this adoption.

Judgment affirmed.

All concur.