In the Interest of R.E.M. and R.J.M., Minors.

T.D.C., Juvenile Officer, Plaintiff-Respondent,

v.

C.B.M., Natural Mother, Defendant-Appellant.

Nos. WD 37259, WD 37261.

Missouri Court of Appeals, Western District.

April 15, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1986.

Application to Transfer Denied July 15, 1986.

George D. Halper, Kansas City, for defendant-appellant.

Debra J. Wilson, Kansas City, for plaintiff-respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

The appellant seeks to overturn the juvenile court's termination of parental rights as to her two boys, R.J.M., age five (5) and R.E.M., age four (4). Both boys are presently in foster care under the supervision of the Division of Family Services. R.J.M., Sr., the father of the minor children, was served by publication in this matter but did not appear. He is not a party to this appeal.

R.J.M. has been under the care of the Division of Family Services most of his life. He was detained in foster care December 1980, and adjudicated into Division of Family Services' custody on February 3, 1981. He was returned to his parents on December 14, 1982, and recommitted to Division of Family Services' foster care on January 26, 1983. R.E.M. had been under the juvenile court's jurisdiction almost since birth and was returned to his parents' custody on February 2, 1982. On January 26, 1983, he was again taken by Division of Family Services and placed in foster care.

At the February 3, 1981 adjudication of the custody of R.J.M., it was determined C.B.M., the mother, left R.J.M. with his grandmother, a nursing home resident. The juvenile court then took jurisdiction and sustained a petition alleging R.J.M. was without proper care, custody, and support due to several conditions including instability of the home, financial crises, mental problems, and marital problems. R.J.M.'s initial contact with the Missouri Division of Family Services dates from December 1, 1980, when a "hotline" tip was re-

ceived concerning him. The social worker responded and first met appellant in a jail cell, unable to cope with reality. Foster care was recommended. The Division of Family Services arranged for a family visit on December 30, 1980, which the parents failed to keep. Seven different case workers attempted to assist this family and C.B.M. during this period. R.E.M. was born in Kansas City on November 11, 1980, and was immediately detained in foster care.

A court approved treatment plan was entered into in February, 1982. The plan provided for the parents to maintain stable housing, since they had heretofore moved many times. They were to receive psychological evaluation, attend counseling, if recommended, and to visit R.J.M. on a regular basis as they had little contact with him after he was placed in foster care. Progress was made and R.E.M. was returned to the parents. R.J.M. remained in foster care. The family progressed and in December of 1982 their social workers recommended the return of R.J.M. to his parents.

In January 1983, the parents went to the Division of Family Services for funds the agency was holding. After the visit the appellant apparently felt that the Division of Family Services would again take R.E.M. and R.J.M. so they moved to Florida. Appellant became ill in Florida and the children were taken into custody by a state agency and returned to Jackson County, Missouri. The parents returned to Kansas City, Missouri, in February 1983, and the father was employed. They did not progress sufficiently to have the children returned.

By August 1983, Rosylin Washington, a social worker, had determined that the parents could not adequately function and from October to December 1983, the family situation substantially deteriorated. The parents were referred to Dr. Innis for evaluation and she recommended the Division of Family Services pursue adoption or the children be placed in long term foster care.

On December 23, 1983, pursuant to the Division of Family Services planning by Valerie Riffert, both parents visited with their children. This is the last time the father saw the children. A subsequent visit was scheduled for February 7, 1984, but the appellant failed to attend. In April 1984, appellant wrote a letter to Ms. Riffert from a hospital in Washington, D.C., and in August 1984, C.B.M. again contacted Ms. Riffert, this time from a hospital in West Virginia.

Appellant did not inform the agency of her plans for the children or if she was coming back to Missouri. During this time she did not visit her children, send them letters, gifts, or furnish them with monetary support. Appellant took up with a Charles E. Lake in Washington, D.C., and subsequently established a home in West Virginia. She did not move back to Kansas City because she felt things were going good for her and that she had the right to live in West Virginia. She did not work with the Division of Family Services for the return of her children. Division of Family Services did receive a West Virginia evaluation regarding appellant's home and based on that, Sheryl Potter, a Division of Family Services social worker, recommended against returning the children to appellant. At the time of trial appellant and Charles Lake shared a trailer on 2½ acres of ground in Mathias, West Virginia. They relied on her social security benefits and his cabinet making ability to provide their financial requirements. During the boys' stay in foster care the appellant felt that the Division of Family Services and foster parents would see to their supervision.

Appellant complains the employees of the Division of Family Services were "frequently too busy to make arrangements" for her to visit her children but the evidence is that appellant did not keep her appointments after the Division of Family Services had arranged visitation.

The appellant first alleges the trial court erred in finding she abandoned her children because the Division of Family Services had involuntarily removed them from her

custody. Appellant incorrectly cites, *In the Interest of W.F.J.*, 648 S.W.2d 210 (Mo. App.1983), as support for this contention. *In the Interest of W.F.J.*, *supra*, at 216, the findings by the court as well as the petition filed by the Division of Family Services failed to allege abandonment. The petition only alleged there was failure of the appellant to visit the children and provide for their support. The petition in the instant case, however, does allege abandonment.

*In the Interest of Gowen*, 610 S.W.2d 319 (Mo.App.1980), the court sustained a termination of parental rights after an adjudication of neglect and abandonment. The mother visited the child for several months and then her visits ceased. From July of 1978 until February 1979, the mother did not visit the child; however, when she learned the Division of Family Services was recommending termination of parental rights she visited her son five times. Subsequently, in May 1979, the mother left the area and had no contact with her son until the termination hearing in December 1979. During this interval she did mail him a few cards and letters and telephoned him several times. The *Gowen* court found these efforts were merely token.

■ A case must be judged on its own unique set of facts. *In re the Adoption of M.D.L.*, 682 S.W.2d 886 (Mo.App.1984). The facts in the instant case are clear, cogent, and convincing that the mother wilfully abandoned her children for more than six months.

The appellant has raised several issues concerning abandonment of her children. She claims the decision is based on an erroneous interpretation of facts and contrary to the law because (1) she had no requisite intent; (2) she was hospitalized; (3) lived in different cities; (4) had limited financial resources; and (5) she repented her abandonment. The allegations in Points II, III and IV of appellant's brief are now addressed.

■ The mother's intent to abandon her children may be inferred by thorough consideration of all of the evidence of the parents' conduct. *In the Matter of the Adoption of Fuller*, 544 S.W.2d 345, 349–50 (Mo.App.1976). The appellant's cited case, *In the Matter of T.C.M.*, 651 S.W.2d 525, 529 (Mo.App.1983), is not dispositive. There the natural parents were litigating the children's adoption following the father's remarriage. The father had actively sought to discourage the mother's visitation. The father brought the children to Missouri from their home on the east coast and away from their natural mother. In the instant case, the natural mother removed herself to Washington, D.C. sometime in January or February 1984, then West Virginia, and did not visit them from December 1983, until the hearing in 1985. This follows a pattern of long absences from her children. From December 1980 until September 1981, she had no contact with them but did state, "Well, I wrote them a letter."

In January 1983, she and R.J.M., Sr. went to Florida and took the children. They sought meals at the Salvation Army and she acknowledged the children were "fairly dirty" and she had run out of diapers. She became ill at this time and the children were removed from their custody in Florida and returned to Missouri.

Next, appellant alleges *S.K.L. v. Smith*, 480 S.W.2d 119 (Mo.App.1972), should govern. Again, the facts therein are different than in the instant case. There the mother did not understand she could visit her children and was discouraged from doing so by the Division of Family Services. In the instant case, the mother had regained custody after following the court approved plan, then left the state with the children who were subsequently returned. The mother herein stayed away for over a year and wrote four letters to D.F.S. She would argue that these letters should defeat a finding of wilful abandonment. She also alleges that because she contested the termination of parental rights she has somehow "repented" and such rights should not be terminated.

Appellant cites *H.G.R. v. Smith*, 483 S.W.2d 779 (Mo.App.1972), but it too is a case in which the mother was told by the Division of Family Services she had no visitation rights until a court decided it. Such is not the instant case.

The appellant alleges that because she was receiving social security and her children were likewise receiving benefits attributable to her, she was, in fact, supporting them. This is a specious argument. She did not personally contribute to their support and excuses this because no one ever instructed her to send support to them. The appellant acknowledges she failed to send Christmas presents, birthday presents, or cards to her children. She left it up to the foster parents to provide them with gifts or cards because she never got "acquainted with the foster care parents."

The mother apparently bases her repentance claim on the fact she contested the termination of the parental rights proceeding. While she acknowledges it is important for her to see her boys on a regular basis and maintain a relationship with R.J.M. and R.E.M., she states, "I feel I have the right to live in West Virginia."

This court will review both the law and the evidence, and will defer to the trial court the questions of credibility of a witness and choosing between conflicting evidence. *In re the Adoption of M.D.L.*, *supra*, at 888; Rule 73.01(c)(2). There was clear, cogent, and convincing evidence to support the trial court's finding that the appellant did not repent of her abandonment of the children. The court in *In Interest of T.H.*, 497 S.W.2d 210, 212 (Mo. App.1973), noted that "abandonment, once established, continues until parental care and support are resumed.... Repentance ... may be determined by the actual or attempted exercise of parental rights and performance of parental duties following the abandonment." Certainly such a condition does not exist herein.

Points V, VI and VII of appellant's brief allege lack of clear, cogent, and convincing evidence concerning her failure to rectify conditions which led to her children being placed under the court's jurisdiction in that (1) there was no reasonable cause to believe that appellant would not rectify the conditions and (2) that the Division of Family Services did not reasonably assist appellant.

The appellant alleges that R.J.M. was taken under the court's jurisdiction because C.B.M. left him with her mother, a nursing home patient. Since this condition did not exist at trial it had been rectified. The juvenile court took jurisdiction of R.J.M. based on the parents' housing problems, lack of financial stability, permanent employment, and marital problems. C.B.M. alleges these problems were rectified by living in a two person household at the time of trial, and that her marital problem had been resolved. C.B.M. has apparently permanently separated from her husband and his whereabouts are unknown and she has taken up with Charles Lake in West Virginia. She is now on medication and is consulting a psychiatrist regularly. Therefore, appellant claims all of the conditions which led to the court's assumption of jurisdiction have been rectified.

However, the court in *In the Interest of M___ K___ P___*, 616 S.W.2d 72 (Mo.App.1981), terminated parental rights even though the physical abuse of the child had ceased by the time of the termination hearing, the child then being in foster care. In *In the Interest of D___ V___ V___*, 677 S.W.2d 396 (Mo.App.1984), the mother contested the termination of her parental rights. In *D___ V___ V___*, the child was physically abused by the father, and after the mother had left the father she claimed the order of termination lacked necessary evidentiary support as the child was no longer abused by the father. The child was first abused in 1978 while in custody of the father. Again in 1981, the father abused the child. In the instant case, the child was removed from the parents for lack of proper care and later returned to appellant, only to be removed again for improper care. The cases are not dissimilar.

■ Frequent moves and lack of contact with one's children as cited by the court *In the Interest of D.R.W.*, 663 S.W.2d 426 (Mo.App.1983), are evidence of unrectified conditions. The court, in that case, terminated the mother's parental rights. A more striking parallel to the instant case is hard to visualize. It is clear from a reading of *In the Interest of D.R.W.*, *supra*, that it is not necessary to prove that the specific instance of improper care continues to exist in order to find a failure to rectify.

The appellant alleges that the Division of Family Services failed to assist her and lost interest in her case. The Division of Family Services is not required to initiate visits or maintain contact between children and parents. The record is replete with evidence that the social workers and juvenile officers encouraged visitation and made attempts to help improve family living conditions. This is true because at one point in time as previously noted the children were returned, albeit short lived. *In the Interest of D.R.W.*, *supra*, at 430, the court noted:

> Visitation or contact that does not originate with the desire of a parent would only amount to a superficial and tenuous relationship. By this agreement the appellant has emphasized her neglect within the meaning of § 211.447.2(2)(i)b.

The mother claims she has improved her living conditions by moving to West Virginia, but objected to the introduction of that state's home study report. The objection was sustained and we do not know, nor can we speculate, on the contents of said report. As in *In the Interest of D.R.W.*, *supra*, at 429, by arguing the insufficiency of the evidence of her conduct, the appellant ignores the evidence contrary to her position. This demonstrates why her position is fundamentally unsound. The trial court did not accept bits of evidence and unfounded conclusions favorable to her. It was not required to do so. As the court noted in *In the Interest of D.R.W.*, *supra*, at 429, "[t]he conduct of the appellant with unmistakeable clarity demonstrates her unrectified neglect of her children." Points V, VI, VII are ruled against appellant.

For Point VIII appellant alleges that the trial court erred in terminating her parental rights as it was not proved to be in the best interest of the children. Only after determining wilful abandonment or wilful neglect will the issue of a child's best interests be reached. *In re the Adoption of M.D.L.*, *supra*, at 889. The record is one the appellant made and is replete with her neglectful ways. Additionally, contrary to the rules, the appellant cites no authority for her contention. Rule 84.04(d). The court nevertheless addresses this point ex gratia. The evidence in each case must be viewed in its totality and the court weighs the information regarding the children's conditions, including their physical and emotional well being with the parents' interests and abilities.

■ The "best interest" of a child is at best a conclusion drawn from the facts and evidence presented. The transcript contains many illustrations of the mother's inadequacies and the evidence was clear, cogent, and convincing that it was in the best interest of the children for the termination of parental rights to be granted. *In re the Adoption of M.D.L.*, *supra*, at 889.

Finally, it is noted, as pointed out by respondent that the trial court herein came to the same conclusion as was reached *In the Interest of J____ Y____*, 637 S.W.2d 670, 673 (Mo. banc 1982):

> The purpose of Chapter 211 "... is to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." Section 211.011 RSMo. (1978). Reunification of the family is the desired outcome in situations such as that presented in this case; *however, the best interest of the child is controlling.* See *In re L.A.H.*, 622 S.W.2d 319 (Mo.App.1981). The evidence introduced at trial showed that for such purpose DFS continually tried to aid appellants in rectifying unacceptable conditions in their home in a reasonable and diligent manner; and that the parents failed to respond. The purpose of Chap-

ter 211 was neither ignored nor defeated. (emphasis added)

The facts contained herein are strikingly similar to those in *In the Interest of S.B.*, 707 S.W.2d 798 (Mo.App.1985), and based on this case alone the learned trial judge's decision was correct.

Judgment affirmed.

All concur.