**In the Interest of B.J.D.B., a Minor, Respondent,**

v.

**J.B.G., Appellant.**

**No. WD 36208.**

Missouri Court of Appeals, Western District.

Sept. 24, 1985.

L. Clay Barton and Susan Long, Blue Springs, for appellant.

James E. Herbertson, Kansas City, for respondent.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

KENNEDY, Judge.

The natural mother appeals the trial court's order terminating her parental rights. Section 211.447.2, RSMo Supp. 1984. The issue is the sufficiency of the evidence.

Judgment affirmed.

The child, B.J.D.B., born June 3, 1977, came under the custody of the Missouri Division of Family Services as a result of orders of the Juvenile Division entered March 7, 1978. The agency has retained legal custody since that date.

The natural father, F.A.B., has abandoned the child since birth and has not attempted communication with her since she was placed in the custody of the agency. He did not appear to contest the termination of his parental rights.

The natural mother, J.B.G., entrusted her daughter to the care of an aunt when the child was approximately four months old, and entered a state hospital, for psychiatric care. The aunt voluntarily relinquished custody of the child to the Division of Family Services in January of 1978, indicating that she was unable to care for the child. The mother, J.B.G., did not contact the Division until May of 1980, when she appeared briefly, without prior notice, and refused services. She contacted the Division again in October of 1980, and indicated that she wished to establish contact with her daughter, who by that time was over three years old.

In March of 1981, J.B.G. entered the first of three treatment plans with the Division. The length of the plan was 180 days. By the terms of the plan, J.B.G. was required to attend parenting classes at Western Missouri Mental Health Center, have a complete psychological evaluation, maintain an independent living arrangement, and arrange regular monthly visits with her daughter. J.B.G. visited B.J. seven times over the course of the following eleven months, and substantially complied with the other requirements of the treatment plan, but she received an unfavorable report from the social worker assigned to her case. The visits, which took place in the State Office Building, lasted approximately one hour and were observed by the social worker. The social worker testified at the termination hearing that J.B.G. did not appear to be forming a bond with her daughter during the visits, and that the child was "quiet and aloof" during the visits. She did not recommend that the agency return B.J. to her mother.

A second treatment plan was initiated in December, 1982. The trial court modified the plan to deny J.B.G. visitation with the child until she complied with the requirements of the plan. J.B.G. had no contact with her daughter from January, 1982, until the court terminated the visitation in December, 1982. The plan instituted in December, 1982, required J.B.G., among other things, to continue treatment with her doctor at the state hospital, take her prescribed medication, and schedule and keep regular monthly appointments with the social worker. The social worker testified that J.B.G. complied with some of the provisions of the second plan, but only made scheduled office visits for the first few months. J.B.G. did not continue with her recommended psychiatric treatment or medication.

J.B.G. entered a third treatment plan with the Division in May of 1983. At this time she had been denied visitation with her daughter for a year and a half. By the terms of the third treatment plan, J.B.G. agreed to maintain her independent living arrangement, supply child support, call the social worker once a month to schedule an office visit, and appear at the appointed time. She did not schedule any visits, and did not supply child support in kind by bringing the child toys and clothing. The juvenile officer filed a motion to terminate her parental rights August 31, 1983, three months after the third plan was initiated. The motion alleges five statutory grounds for termination, as follows: abandonment, neglect, failure to support, mental condition, and failure to rectify. Section 211.-447.2(2), RSMo Supp.1984.

At the termination hearing, the juvenile officer introduced the records of the Western Missouri Mental Health Center regarding treatment of J.B.G. for mental disorders. The records show that she was admitted to Western Missouri for inpatient psychiatric care on seventeen separate occasions between 1972 and the filing of the petition for termination, and had also been a patient in various other mental hospitals. The trial court found that J.B.G. has been diagnosed as having "an affective disorder, either of a manic depressive or schizoaffective nature, schizophrenia of a chronic undifferentiated type, depressive neurosis, schizoid personality, atypical manic-depressive compounded by habitual excessive drinking and other substance abuse and emotional immaturity and chronic free-floating anxiety." The court concluded from the medical reports that J.B.G.'s mental condition could be controlled by a regimen of appropriate medication and counseling, which she refuses to follow, and that as a result of her mental condition, she is unable consistently to form an intent or act knowingly.

 We must sustain the decision of the trial court unless there is no substantial evidence to support its judgment, the judgment is against the weight of the evidence, or erroneously declares or applies the law. *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984); *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Missouri law requires the high "clear, cogent and convincing" standard of proof to be met by the authority seeking termination. *In re Adoption of W.B.L.*, 681 S.W.2d at 454. The "clear, cogent and convincing" standard of proof is met when the evidence "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *Id.* (quoting *In re O'Brien*, 600 S.W.2d 695, 697 (Mo.App.1980)). But it may be met, even if the court has contrary evidence before it. *Id.* This test has recently been interpreted as meaning that the court, weighing all the evidence for and against the termination, "should be *clearly convinced* of the affirmative of the proposition to be proved." *In re J.D.K.*, 685 S.W.2d 876 (Mo.App.1984) (quoting *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo. 1974)).

 The authority seeking termination must prove one or more of the statutory grounds for termination. In the *Interest of M.N.M.*, 681 S.W.2d 457, 458 (Mo.App. 1984). Only after it has made a determination that one or more of the statutory grounds exists may the trial court reach the issue of the best interests of the child. *In re Adoption of M.D.L.*, 682 S.W.2d 886, 889 (Mo.App.1984). The statute permits termination when the child has come under the jurisdiction of the juvenile court pursuant to the provisions of Section 211.031, RSMo Supp.1984, the custody of the child has not been with the parents for six months or longer, the parents have failed to rectify the conditions that formed the basis for the juvenile court's jurisdiction, and no reasonable cause exists to believe that the parents will rectify the conditions if given more time. Section 211.447.-2(2)(i)b, RSMo Supp.1984. Further statutory grounds include neglect, as shown by failure to reasonably comply with an appropriate court-approved plan, or mental condition that renders the parent "unable to form an intent or act knowingly," such that the parent has substantially neglected the child and there is no reasonable likelihood that the condition is reversible. Section 211.447.2(2)(b), (g)a, RSMo Supp.1984.

The trial court found that the evidence supported each of three of the grounds alleged for the termination of the mother's parental rights, namely, six months' neglect; failure to rectify the conditions which caused the juvenile court originally to take jurisdiction of the child; and the mother's mental condition. We will review only one of the three, namely, that "(t)he (mother) has a mental condition which renders (her) unable to form an intent or act knowingly and is shown by competent evidence to be permanent or that there is no reasonable likelihood that the condition is

reversible, and such parent has substantially and repeatedly neglected the child or failed to give the child necessary care and protection."

On this point, the trial court found as follows:

The court further finds that the evidence is clear, cogent and convincing that the mother suffers from and has suffered from a mental disorder variously described as an affective disorder, either of a manic depressive or schizoaffective nature, schizophrenia of a chronic undifferentiated type, depressive neurosis, schizoid personality, atypical manic-depressive compounded by habitual excessive drinking and other substance abuse and emotional immaturity and chronic free-floating anxiety with the result that she is unable to appropriately or positively react to stress, exercises poor judgment and insight and evidences paranoid-like ideation; that while said mental conditions are not curable they may be controlled by a regular and consistent regimen course of appropriate medication and counseling which the mother refuses to follow because she refuses to consistently and regularly accept the fact of the condition of her mental health and, further, as a result (she) is unable consistently to form an intent or act knowingly; that as a result of the aforesaid condition or conditions of the mother's mental health, she was hospitalized at the St. Joseph State Hospital from March 28, 1974 to August 28, 1975, from October 25, 1977 to February 5, 1978 and from February 26, 1979 to April 10, 1979; that since 1972, the mother has been admitted, either voluntarily or involuntarily to the Western Missouri Mental Health Center on forty-nine occasions including approximately seventeen inpatient admissions of various durations, and numerous after-care and day-center admissions; that by reason of said pattern and history, there is no reasonable likelihood that the mother will in the future consistently follow such treatment and that it is reasonably likely that the symptoms and consequences of said mental abnormali-

ties will re-occur in the future and that there is no reasonable likelihood that the condition is reversible and that said mother has substantially failed to give the child necessary care and protection and it is not reasonably likely that she could give the child necessary care and protection by reason of all of the aforesaid.

■■ There is an abundance of evidence in the record to support the above findings in every particular. We cannot disagree with the trial judge that the evidence was clear, cogent and convincing that the mother's mental illness will preclude her from giving the child necessary care and protection.

The dissent criticizes the trial court's inference that the mental condition shown by the evidence resulted in the mother's inability to form an intent or to act knowingly. It selectively quotes excerpts from the medical records which would support an opposite conclusion. There is, however, an overwhelming corpus of evidence which supports the trial court's inference. To quote from the medical records: "Much of (mother's) conversation made no sense. Patient seemed to be hearing things and be out of touch ... Patient was loud, aggressive, uncooperative, not relating to reality. Patient seems in process of psychosis. Patient cannot care for self or function outside ... At this time she is delusional ... Insight poor ... The patient appears withdrawn, expressionless, and avoids eye contact ... Her speech was monotonic and she spoke only when she was spoken to ... In past, patient has exhibited lack of insight and poor judgment, combined with lack of impulse control (has left the unit AWOP or signed out AMA numerous times.)"

Added to the medical evidence is the evidence of the family services caseworkers who had frequent contacts with this mother over a long period of time. They observed such incongruous behavior and the most irrational conversation which are entirely consistent with the medical

records, all of which support the trial judge's conclusions with respect to her mental condition. That this mental condition is permanent and inescapable; it has continued for perhaps as long as 20 years with only occasional and temporary improvement. Furthermore, it is a perfectly reasonable inference from this record that the mental condition is the basic cause for the many years of failure to give the child "necessary care and protection".

The trial court could reasonably infer from the evidence that the mother's mental condition rendered her unable to form an intent or to act knowingly, without any express medical testimony of that fact. It is a conclusion which naturally and inevitably flows from the symptoms described in the testimony. See *In the Interest of J.I.W.*, 695 S.W.2d 513 (Mo.App.1985).

Having found that the evidence supports the trial court's finding of the existence of one of the disjunctive grounds for the termination of parental rights under § 211.-447, RSMo, it is not necessary for us to determine whether the evidence also supports the court's findings on the other two grounds.

Judgment affirmed.

DIXON, J., dissents in separate opinion.

DIXON, Judge, dissenting.

I dissent.

The record and briefing in this case are far from satisfactory. The presentation of evidence in the trial court on the Juvenile Officer's behalf was, at best, perfunctory. The court and the child have not been well served by counsel for the respondent Juvenile Officer, either at the hearing or in this court. The hearing was February 9, 1984. The trial court entered its order July 10, 1984. The transcript and legal file were presented for filing November 7, 1984. Appellant's brief was timely filed. Respondent did not timely file a brief. After notice of such failure, a motion to file out of time was granted, on the stated ground that important issues were presented in the

case which required additional time to brief. On April 3, 1985, respondent's six-page brief was filed. Three pages are devoted to a fact statement, and the argument portion is two and one-half pages.

Appellant mother's sole contention is that no clear, convincing, and cogent evidence supports the trial court's order terminating her parental rights. The Juvenile Officer concedes that the only grounds upon which the trial court order rests are those embraced within § 211.447.2(2)(g), relating to the mother's mental condition, and § 211.447.2(2)(i)b, relating to the mother's failure to rectify the conditions that caused the child to be removed from custody.[1] The court's order undoubtedly rests on a finding that the mother suffered from a mental condition, which rendered her "... unable to form an intent or to act knowingly...." The order also rests, alternatively, on her failure to rectify the conditions which caused the original order changing custody.

At the hearing, the Juvenile Officer presented the testimony of two case workers who had been in charge of the juvenile and her mother from March 1981 until November 1983. These witnesses testified about the court-approved plans and the mother's compliance or noncompliance with those plans. Most of the testimony is simply irrelevant to the issue presented here. In summary, the mother substantially complied with the first treatment plan, which began on April 29, 1981. A new plan, started on December 14, 1982, denied the mother any visitation until she had complied with the plan for ninety days. Included in the provisions of that plan was a requirement that she have a comprehensive psychiatric evaluation. This evaluation was performed by a Dr. Levine in March 1983. On May 5, 1983, a third plan was approved. It required that the mother continue treatment with Dr. Levine, and continued the denial of visitation. There was difficulty in obtaining funding, but even after it was obtained, the mother did not

---

1. All statutory references are to RSMo 1978 unless otherwise stated.

follow through with the treatment. In addition to this testimony, the Juvenile Officer introduced the records of the Western Missouri Mental Health Center and the case file. The case file was offered and admitted for the limited purpose of assisting the court in determining the child's best interests and was specifically not offered on the merits of the ground for termination. From those documents, the following appears.

The mother was born in 1944. By her own account, she was first treated for mental disorder in 1964, at age 21. She was admitted to Western Missouri Mental Health Center as an inpatient in March 1972. She has had five or six children—three survive. Her son, born in September 1966, has been adopted by others. Her son, born August 1967, was detained in Western Missouri Mental Health Center in 1983. B.J.D.B., the child presently in question, was born June 3, 1977. The records are somewhat confusing, but the mother was admitted to St. Joseph State Hospital from March 26, 1974 to August 28, 1975. On April 1, 1976, she was again admitted and remained a patient until August 1977. She was on leave status from July 1976 until August 1977 and was not residing in the hospital. She was readmitted in October 1977 and remained until February 1978. In the fall of 1977, the mother left B.J.D.B. with her sister because of the mother's imminent return to the hospital. In January 1978, the sister delivered the child to the Family Services Office in Jefferson City, Missouri, and the Juvenile Court assumed jurisdiction, placed custody in Family Services, and in March of 1978, transferred the child to the jurisdiction of Jackson County, where the mother was living after her discharge from the hospital. The child was placed in foster care immediately and has remained in the same foster home ever since.

It would serve no purpose to repeat the litany of admissions and treatments for this mother's mental illness. She has had over twenty separate admissions to Western Missouri Mental Health Center. She was admitted to a state hospital in South Dakota. She may have been treated in Illinois, Oklahoma, and Colorado. Beginning in March 1978, Family Services has attempted to keep track of the mother and to provide contacts between the mother and the child. The social workers saw the mother two or three times a month in the early years, except when the mother disappeared for periods of time. These contacts lessened over the years and became more sporadic. No plan for reuniting the mother and child was formulated until 1981.

The record is far from clear, but the mother apparently visited with the child on a monthly basis from 1978 to late 1982. In December 1982 the visitations were stopped on the order of the juvenile court commissioner.

The trial court's termination order recites as follows:

[T]he mother suffers from and has suffered from a mental disorder variously described as an affective disorder, either of a manic depressive or schizoaffective nature, schizophrenia of a chronic undifferentiated type, depressive neurosis, schizoid personality, atypical manic-depressive compounded by habitual excessive drinking and other substance abuse and emotional immaturity and chronic free-floating anxiety with the result that she is unable to appropriately or positively react to stress, exercises poor judgment and insight and evidences paranoid-like ideation; . . . .

Evidentiary support unquestionably exists for those findings of fact. The findings are but recitations of diagnoses and findings of persons treating the mother for her mental illness, and they appear repetitively in the various admissions. Based on these findings, the trial court concluded:

[F]urther, as a result [she] is unable consistently to form an intent or act knowingly; . . . .

Nothing in this record supports that conclusion. No medical witness testified to any such condition, nor is there even a statement in any of the records that the mother was unable to "form an intent" or

"to act knowingly." In fact, the record reveals the opposite. The mother was described in the records as "well oriented," "reliable on statements," "memory intact," "no memory impairment," "oriented to time, place, and person," "intellect average," "insight and judgment essentially normal." It is also true that the records exhibit bizarre statements and behavior, but, in many instances, these were noted on admission from police custody when she had been drinking. The majority cites from one admission and says there is a "corpus" of such evidence. There is no such body of evidence as the majority suggests.

Proceedings for the termination of parental rights are of the utmost gravity because of the resultant severance of all ties between a natural parent and a child. *D.J.A. v. Smith,* 477 S.W.2d 718 (Mo.App. 1972). The power to terminate parental rights is entirely statutory and it is imperative that the statutes be strictly complied with. The statute, itself, requires that the order terminating parental rights recite a factual finding of one or more conditions permitting termination. The finding must be supported by clear, convincing, and cogent evidence, § 211.447.2(2), and this requirement has constitutional dimension. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Substantial evidence must support the findings and an absence of substantial evidence justifies reversal. *Juvenile Office of Cape Girardeau Cty. v. M.E.J.,* 666 S.W.2d 957 (Mo.App.1984).

This record contains *no* evidence that the mother is suffering from a mental condition, which "renders him (her) unable to form an intent or act knowingly." The trial court made its ultimate finding based on the existence of the mental conditions noted in the record. The record contains no evidence that the existence of such mental conditions necessarily demonstrates the mother's inability to form an intent or act knowingly. Without such evidence, the trial court's conclusion lacks substantive evidence to support it and must be reversed. *In Interest of C.P.B.,* 641 S.W.2d 456 (Mo. App.1982), is a case where there were comparable, although stronger, facts for termination, yet the court held the evidence was not sufficient to support termination of the mother's parental rights.

The statute requires clear, cogent, and convincing evidence that a mental condition exists which "renders" the parent "unable to form an intent or act knowingly." No evidence exists of any kind that the mother's mental condition "renders" her "unable to form an intent or act knowingly." There is no evidence in the instant case that the mother's condition is incurable or permanent, a necessary finding under the statute. In fact, the most recent evaluation by Dr. Levine suggests that remedial care would make the mother a suitable custodian. Not only is there no proof her condition is irreversible, the only proof on the issue is to the contrary.

The order terminating the parental rights of the mother should be reversed.