**IN the INTEREST OF B.S., T.S., J.S., and F.S.**

Nos. 50398–50401.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 13, 1986.

Norman C. Steimel, St. Charles, for appellant.

Patricia A. Thomas, St. Charles, Charles F. James, Wentzville, for appellee.

PUDLOWSKI, Judge.

This action is a consolidated appeal from four orders of the Juvenile Court of St. Charles County terminating the parental rights of the appellants under Chapter 211.[1] We affirm.

JoAnn S., appellant, is the natural mother of two daughters, B.S. and T.S., and the natural mother of two sons, J.S. and F.S.[2] JoAnn is married to J.C.S., the natural father of B.S. J.C.S. is also the legal father of F.S., J.S., and T.S.[3] Forrest H., appellant, is the natural father of F.S., J.S., and T.S.

On January 13, 1982, the juvenile officer of St. Charles County instituted separate proceedings to take temporary custody of B.S. and T.S. In August 1981, B.S., then thirteen, had been sexually molested by Forrest who was subsequently imprisoned for his conduct. In January 1982, T.S., then eight, had been sexually molested by Forrest's brother. On January 18, 1982, the juvenile officer filed two petitions pursuant to § 211.031. The petitions requested the juvenile court to take jurisdiction over B.S. and T.S. In these petitions, the juvenile officer alleged that JoAnn had failed to take the appropriate action necessary to protect her two daughters from sexual abuse.

On May 20, 1982, the juvenile court placed B.S. and T.S. with the Missouri Division of Family Services.[4] The court's orders included the finding "that the parents legally responsible for the care, custody and support of said juvenile failed to provide the proper care and supervision by reason of neglect."

Following these orders, the Division of Family Services entered into a written service agreement with JoAnn on July 1,

---

1. All statutory references are to RSMo Cum. Supp.1984.

2. At the time of the termination hearing, B.S. was sixteen years old, T.S. eleven, J.S. was fourteen, and F.S. was twelve.

3. J.C.S. has not appealed the termination of his parental rights in the four children.

4. The Division of Family Services first became actively involved with JoAnn and her family in 1970.

28

1982.[5] The purpose of this agreement was to enable JoAnn to provide adequate care and protection for B.S. and T.S. so that they could be returned to her care.

On July 30, 1982, the juvenile officer instituted two additional proceedings to take custody of J.S. and F.S. With JoAnn's knowledge, both J.S. and F.S. had stolen bicycles, sold them, and then given the money to their mother. On August 26, 1982, the juvenile officer filed two petitions under § 211.031 requesting the juvenile court to take jurisdiction over J.S. and F.S. On October 7, 1982, the court entered two orders placing J.S. and F.S. with the Division of Family Services. Each order included the finding "that the parents legally responsible for the care, custody and support of said juvenile failed to provide the proper care and supervision by neglect by failing to exercise proper supervision and guidance over the juvenile."

On October 21, 1982, the Division of Family Services entered into a second written service agreement with JoAnn. This was followed by a third agreement on September 23, 1983, which included both JoAnn and Forrest. It was the division's goal to reunite JoAnn and Forrest with the four children. At the end of the third agreement, the Division's social worker, Julie Sandifer, recommended that the parental rights of Forrest and JoAnn be terminated. The juvenile officer disagreed and gave Forrest and JoAnn an independent chance to regain custody of the four children.

Thereafter, two separate but almost identical agreements, one between the Division and Forrest, the other between the Division and JoAnn, were entered into on June 21, 1984. When these two agreements were evaluated, Mrs. Sandifer advised JoAnn and Forrest that they had failed to live up to the terms of the agreements and that petitions for the termination of their parental rights in the four children were being filed.

On May 2, 1985, a lengthy evidentiary hearing was held. Joan O'Loughlin, a social worker with the Division of Family Services, testified about the original custody of the children, their jurisdiction under the juvenile court, and the first two written service agreements. Mrs. Sandifer testified about the last written service agreement and the present state of the family. In addition, the children were present and testified. Both F.S. and J.S. expressed their willingness to be adopted. T.S. and B.S. testified that they desired to return to JoAnn and Forrest.

On June 5, 1985, the court entered its orders terminating the parental rights of JoAnn, Forrest, and J.C.S. J.C.S.'s parental rights in the four children were terminated because the court found that he had abandoned the children for a period of six months or longer before the filing of the petitions to terminate parental rights. JoAnn's parental rights in the four children were terminated on two grounds: (1) she failed to rectify the conditions which formed the basis for the petitions filed under § 211.031 and (2) she failed to reasonably comply with the service agreements formulated by the Division of Family Services. Forrest's parental rights in J.S., F.S., and T.S. were also terminated because he failed to reasonably comply with the service agreements.

On appeal, JoAnn and Forrest contend the trial court's judgment was erroneous because: (1) there was no clear, cogent, and convincing evidence that JoAnn failed to rectify the conditions which formed the basis for the petitions filed under § 211.031; (2) the Division of Family Services failed to exercise reasonable, diligent, and continuing efforts to aid JoAnn and Forrest to rectify the conditions which formed the basis of the petitions filed pursuant to § 211.031; and (3) the evidence failed to show that the appellants had not reasonably complied with the various written service agreements.

---

**5.** A service agreement was designed to cover a six month period. At the end of six months, the Division would then evaluate the agreement.

We first address the appellants' third contention. In this point, JoAnn and Forrest challenge the trial court's finding that the termination of their parental rights under § 211.447.2(2)(b) was appropriate because they had reasonably complied with the written service agreements formulated by the Division of Family Services. We disagree. To overcome the trial court's decision, the appellants must show that there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984).

On July 1, 1982, JoAnn entered into her first written service agreement with the Division of Family Services. This agreement was formulated after B.S. and T.S. came within the jurisdiction of the juvenile court because of sexual abuse by Forrest and his brother. The agreement required JoAnn to visit B.S. and T.S. weekly, undergo a psychological evaluation and participate in counseling, take steps to avoid abuse or neglect, maintain a suitable residence for the children's welfare, contact her social worker monthly, inform the division of all changes in her situation, and investigate employment.

Before the first service agreement ran its six month course, JoAnn's sons, J.S. and F.S., were placed in the custody of the Division of Family Services for stealing bicycles. On October 21, 1982, JoAnn entered into a second service agreement. This agreement required JoAnn to meet with her children monthly, receive psychiatric treatment and family counseling, develop parenting skills to prevent potential abuse or neglect, maintain a suitable residence, and contact the Division monthly. Despite the terms of this agreement, JoAnn failed to improve her conditions or her housing so that she could be reunited with her children.

On September 23, 1983, the third service agreement was formulated and approved. This agreement involved both Forrest and JoAnn. Its goal was family reunification. Like the previous agreements, the agreement specified periodic visits with the children, contacts with the Division, and continuing counseling for JoAnn. The agreement also required Forrest to obtain counseling and attend weekly Alcoholics Anonymous meetings. At the end of this agreement's time period, the Division of Family Services concluded that JoAnn and Forrest had failed to comply with the agreement's terms and recommended the termination of their parental rights. The juvenile officer disagreed, however, and proposed that JoAnn and Forrest be given an independent chance to regain custody of the children.

On June 21, 1984, Forrest and JoAnn entered into separate service agreements with the Division of Family Services. The agreement with Forrest specified the following conditions: (1) joint therapy with JoAnn; (2) monthly visits with his children; (3) adequate housing for the family; (4) weekly meetings with a NECAC Parent Aide; (5) gainful employment; (6) weekly attendance at Alcoholics Anonymous meetings, abstention from alcohol, and avoidance of bars and taverns; and (7) monthly meetings with a social worker from the Division. At the termination of this agreement, the Division concluded that Forrest complied with Condition No. 5; marginally complied with Conditions Nos. 1, 2, and 7; and failed to comply with Conditions Nos. 3, 4, and 6.

The agreement with JoAnn specified six conditions: (1) joint therapy with Forrest; (2) monthly visits with her children; (3) adequate housing; (4) weekly meetings with her NECAC Parent Aide; (5) employment; and (6) monthly meetings with her social worker from the Division. When her agreement terminated, the Division determined that JoAnn fully complied with Conditions Nos. 4 and 6; marginally complied with Conditions Nos. 1 and 2; and failed to comply with Conditions Nos. 3 and 5.

In addition to the conclusions of the Division of Family Services, the record discloses additional evidence that JoAnn and Forrest failed to successfully participate in the fourth service agreement. Their mere

**30**

participation in the agreement was not sufficient. Parents must make a commitment to change the course of conduct which prevents the return of their children. *See In the Interest of J— Y—*, 637 S.W.2d 670 (Mo. banc 1982). Indeed, during the pendency of the fourth agreement, JoAnn and Forrest lacked a stable relationship. Early in the agreement, JoAnn was involved with another man. At times, Forrest was out of town. Nor did they possess stable living quarters. Often they resided in a single room in the Cave Springs Bugetel. Moreover, Forrest not only failed to refrain from alcohol but actually increased his drinking during the course of the agreement.

Under these circumstances, we find sufficient evidence to support the trial court's judgment terminating JoAnn and Forrest's parental rights pursuant to § 211.447.-2(2)(b) on the ground that they had failed to reasonably comply with the written service agreements.

Because the trial court's finding that JoAnn and Forrest failed to comply with the service agreements is supported by the evidence, we need not consider their remaining points on appeal. As long as one of the grounds for termination is supported by the evidence, we must let the termination stand. *B.J.D.B. v. J.B.G.*, 698 S.W.2d 328, 332 (Mo.App.1985).

Judgment is affirmed.

CRANDALL, P.J., and SATZ, J., concur.