In the Interest of J.M., (A Male Minor), Plaintiff.

JUVENILE OFFICER, Respondent,

v.

D.M.M., (Natural Mother), Appellant.

No. WD 43795.

Missouri Court of Appeals, Western District.

Aug. 27, 1991.

---

Edward Berg, Mid–Missouri Legal Services, Columbia, for appellant.

Elton W. Fay, Grimes, Fay, and Gaeth, Columbia, for respondent.

William Mallory, Guardian ad Litem, Columbia for plaintiff.

Before KENNEDY, P.J. and FENNER and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

The natural mother, D.M.M., appeals from the trial court's judgment terminating her parental rights in her son, J.M. Appellant, D.M.M., contends there was no clear, cogent and convincing evidence that the Division of Family Services (DFS) made reasonable efforts to reunify D.M.M. and her son after J.M. was placed in DFS custody.

The judgment is affirmed.

A review of the pertinent facts and case chronology is beneficial. J.M. was born on September 2, 1982, to D.M.M. and W.G. At the time of the birth, D.M.M. and W.G. were not married, nor have they ever been married. W.G. consented to the termination of his parental rights. On March 9, 1984, D.M.M. voluntarily placed J.M. with DFS and entered a drug rehabilitation center to receive treatment for chronic drug abuse. On May 14, 1984, J.M. became a ward of the Boone County Juvenile Court and was placed with M.S.B. and C.B., his paternal aunt and uncle. J.M. has remained with M.S.B. and C.B. continuously and exclusively since that date.

D.M.M. was convicted of forgery on February 14, 1984, a month before she voluntarily placed J.M. with DFS. She received a suspended sentence of three years and was placed on supervised probation for five years. At the time she placed J.M. with DFS, D.M.M. was directed by her probation officer to enter a drug rehabilitation pro-

gram for heroin and other drug abuse. She failed to complete said program. Weekly visits between J.M. and D.M.M. were arranged during this time. On March 28, 1984, D.M.M. was placed in the Boone County jail for testing positive for drug use, a violation of her conditions of probation. D.M.M. bonded out of jail on April 5, 1984.

In mid-April, D.M.M. was placed in another residential drug rehabilitation center. While there, she was observed to have fresh needle marks on her hands and slurred speech, both of which indicated drug use. Thereafter, D.M.M. was discharged from the clinic on April 25, 1984, for failing to return in a timely fashion.

D.M.M. absconded from supervised probation and her whereabouts were unknown from the end of April until September, 1984. During this time, D.M.M. sent one letter to J.M. and called DFS four times to inquire about her son. D.M.M. was returned to the Boone County jail, but was not allowed visitors due to her continued drug use while being held in that facility. On October 15, 1984, D.M.M.'s probation was revoked and she was ordered to serve her prison sentence at the Chillicothe Correctional Center. She was transferred to Chillicothe on November 27, 1984.

Her DFS case was transferred to personnel at Livingston County DFS, whereupon visits with J.M. were to be scheduled. Visitation was not arranged until March 8, 1985. D.M.M. filed a Motion for Visitation in the juvenile court on March 29, 1985. D.M.M. and J.M. had visitation on March 8, and again on April 18, 1985. D.M.M. was released to the Kansas City Honor Center on June 5, 1985. She tested positive for drug use upon admission.

D.M.M. was returned to the Chillicothe Correctional Center on July 16, 1985, after having three violations at the Honor Center. This time she remained at Chillicothe from July 16, 1985, to March 3, 1986. Upon D.M.M.'s return to Chillicothe, pursuant to court order, visitations were to take place once a month. Accordingly, visitations between D.M.M. and J.M. took place in August, October and December of 1985, and January and February of 1986.

D.M.M. was released to the Kansas City Community Center on March 3, 1986. A visit with J.M. was scheduled for April 12, 1986, but did not occur. When D.M.M. called DFS mid-morning of that date, her speech was slurred, she did not know where she was and she was unable to listen to or follow directions. D.M.M. absconded from the Kansas City Community Center on April 14, 1986, and later that same day was arrested in Jefferson City, Missouri.

D.M.M. was returned to the Chillicothe facility on September 2, 1986, and requested visits to resume that same month. However, between September, 1986, and February, 1987, visitation with J.M. did not occur. The factors which negatively affected the scheduling of visitation were a change in DFS personnel, the ill health of J.M., J.M.'s request that M.S.B. accompany him on the trips to Chillicothe and the Chillicothe prison PATCH Coordinator's inability to establish a visitation schedule accommodating the schedules of all the persons involved.

D.M.M. filed a Motion to Establish Visitation in the juvenile court on February 4, 1987. Visits resumed February 24, 1987, at the Chillicothe Correctional Center. The visit was held in a smoke-filled room which caused J.M. to become ill as he has a continuing problem with chronic bronchial infections. A March visit was postponed due to the PATCH coordinator's inability to schedule a time for a visit when M.S.B. could take J.M. to Chillicothe. The May visit was canceled due to prison violations by D.M.M. which resulted in her being placed in disciplinary segregation. After her return to the regular prison population, visits took place in June, July, August, September and October of 1987. D.M.M. was released from the Chillicothe Center on November 24, 1987. She made no contact with DFS until January 15, 1988, when she informed DFS that she had moved to Illinois to live with her parents.

D.M.M. filed a Motion to Establish Visitation in the juvenile court on January 22, 1988. Visits were scheduled on February

1, March 3, and April 4, 1988. Additional visits beyond those monthly visits could be requested by D.M.M. and she did so on two occasions. D.M.M. attended a permanency planning meeting with her DFS case worker, M.S.B., and representatives from the juvenile office on February 29, 1988. On March 3, 1988, another meeting was held to establish a reunification plan. Both of these meetings occurred after the filing of the petition for termination of parental rights.

The petition for termination of parental rights was filed February 5, 1988. After the petition was filed and before the conclusion of the hearings on said petition, D.M.M. married and began living with her husband in Illinois. She was employed at four jobs during this time period. D.M.M.'s husband and a former employer testified that they were unaware of any drug usage from their contact with D.M.M.

Evidence on the petition was heard on four different dates. D.M.M. did not testify at any point in the termination hearings, nor did she appear at the last hearing when she was the only witness scheduled to testify. D.M.M.'s attorney reported the reason for her absence being that she was assaulted the evening before, was on pain medication and had a problem staying awake.

The hearing had been continued one time previously for D.M.M.'s inability to appear.

The trial court ordered the parental rights of D.M.M. terminated upon its findings that J.M. has been under the jurisdiction of the juvenile court for more than one year; that D.M.M. has a chemical dependency which prevents her from consistently providing necessary care, custody and control of J.M. and which by history has not been treated so as to enable her to consistently provide such care, custody and control; that conditions of a potentially harmful nature continue to exist and there is little likelihood that these conditions can be remedied at an early date so that the child can be returned to his mother; and the juvenile does not have emotional ties to his mother.

This cause was previously before this court in *In the Interest of J.M.*, 789 S.W.2d 818 (Mo.App.1990). In the first appeal, this court found substantial evidence to support the trial court's finding of clear, cogent and convincing evidence that termination of the parental rights of D.M.M. is in the best interests of J.M., under subparagraph (d) of § 211.447.2(3), RSMo.1986.[1] Proof of any one of the four factors listed in subparagraphs (a) through (d) of § 211.447.2(3)[2] is sufficient for termination of parental

---

1. All statutory references are to Missouri Revised Statutes, 1986, unless otherwise noted.

2. Section 211.447.2(3) provides:
**211.447. Juvenile court may terminate parental rights, when-investigation to be made-grounds for termination.**
2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or that there is no such reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control.
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control.

rights. *In re H.K.*, 762 S.W.2d 465 (Mo. App.1988).

Despite the court's ruling that there is sufficient evidence to support the termination, the opinion further stated "this court is not in a position to overlook the clear statutory mandate that 'the court *shall* consider and make findings . . .' as to subparagraphs (a) through (d). Section 211.447.2(3), RSMo 1986." Upon the determination that the trial court had not made the mandatory findings as to subparagraphs (a) through (c) of § 211.447.2(3), the cause was remanded to the trial court with directions to enter such findings.

The trial court entered the mandated findings in its subsequent order as follows:

Now on this 26th day of June 1990, as per Mandate of the Court of Appeals Western District entered June 21, 1990, the Court enters the following findings with respect to the Section 211.447.-2(3)(a), (b), (c) RSMo:

1. The Mother and the Division of Family Services did not enter into a Social Service Plan, due to Mother's incarceration and subsequent removal from the State of Missouri;

2. The Division of Family Services has been unable to aid the Mother on a continuing basis to adjust her circumstances or conduct to provide a proper home for the Juvenile, as a result of Mother's behavior;

3. Mother does not suffer from a mental condition which renders her unable to knowingly provide the Juvenile necessary care, custody or control.

From this subsequent order, this timely appeal follows. This court will address the issues raised only in the context of the juvenile court's subsequent order reflecting its findings pursuant to 211.447.2(3)(a)-(c) as mandated by this court in *In the Interest of J.M., supra.*

 The paramount concern in any termination of parental rights is the best interest of the child. *In the Interest of M.E.W.*, 729 S.W.2d 194 (Mo. banc 1987). The state must prove its case based upon clear, cogent , and , convincing evidence. *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo.

banc 1985). Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true. *In re Adoption of W.B.L.*, 681 S.W.2d 452 (Mo. banc 1984). This court defers to the trial court's assessment of the credibility of witnesses. *D.G.N.*, 691 S.W.2d at 912.

This is a court-tried action. Therefore, this court affirms the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court erroneously declared or applied the law. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *B.J.D.B. v. J.B.G.*, 698 S.W.2d 328 (Mo.App.1985). The facts are reviewed in the light most favorable to the trial court's order. *In the Interest of M.E.W.*, 729 S.W.2d at 194.

D.M.M. presents one point on appeal, which, in summary, contends the trial court erred in terminating D.M.M.'s parental rights because there was clear, cogent and convincing evidence that DFS did not provide reasonable efforts to reunify D.M.M. and J.M. in that (1) DFS did not file a service plan as required by § 211.181.4 RSMo.1986, and (2) DFS did not provide necessary assistance for drug rehabilitation for D.M.M., nor was meaningful visitation arranged by DFS for D.M.M. and J.M. In support of her contention that DFS did not provide reasonable efforts for reunification, D.M.M. points to § 211.447.2(3)(a), (b) which require the juvenile court to consider, "[t]he terms of a social service plan entered into by the parent and the division . . ." and "[t]he success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis. . . ."

D.M.M. in essence argues that because no social service agreement was entered into between herself and DFS, and because D.M.M. feels she was not availed of all services DFS could have provided, termination of her parental rights should not have occurred because there was not clear, cogent and convincing evidence presented

by the juvenile officer that the division provided all reasonable efforts for reunification.

D.M.M. is incorrect in her contention that subparagraphs (a) through (d) of § 211.-447.2(3) must individually be proven by clear, cogent and convincing evidence before termination may be granted. Such argument is, in effect, that subparagraphs (a) through (d) are grounds for termination. Missouri case law clearly invalidates this assumption:

"Subparagraphs (a) through (d) of Section 211.447.2(3) are merely factors to be considered under the ground for termination provided in that subdivision, i.e., Section 211.447.2(3). These factors are not separate grounds for termination in and of themselves but rather categories of evidence to be considered together with all other relevant evidence."

*In re W.D.T.*, 785 S.W.2d 286, 288 (Mo.App. 1990) (quoting *In re H.K.*, 762 S.W.2d 465, 469 (Mo.App.1988)).

■■■ The correct standard, as articulated by the courts of this state, is that "[p]ursuant to the provisions of § 211.447, the trial court must decide that the evidence clearly, cogently and convincingly demonstrates the existence of at least one of the conditions forming the basis of the termination petition, and determine whether termination would be in the best interests of the children." *In re Interest of A.L.B.*, 743 S.W.2d 875, 879 (Mo.App.1987) (citations omitted). In the case at bar, the juvenile office must prove by clear, convincing, and cogent evidence, that D.M.M. on a continuing basis had failed to rectify the conditions giving rise to the termination proceedings, i.e. her drug abuse, and that there is reasonable cause to believe D.M.M. will not rectify the conditions if given more time. *In Interest of W.F.J.*, 648 S.W.2d 210, 214 (Mo.App.1983). Although the effort of DFS to reunify the parent and child is a factor to be considered, "even the absence of treatment or services is no defense to a termination proceeding." *In re Interest of A.L.B.*, 743 S.W.2d at 881 (citations omitted).

Here, the trial court made its finding that no social service plan was entered into between DFS and D.M.M. due to D.M.M.'s incarceration and subsequent removal from the State of Missouri. D.M.M. contends the lack of social service plan means that no reasonable efforts of reunification were made by DFS. Additionally, D.M.M. contends that DFS did not provide the requisite services to her, specifically drug rehabilitation and meaningful visitation between her and J.M.

■■■ The substance of the conditions which formed the basis to terminate D.M.M.'s parental rights is that her drug abuse prevents her from consistently providing necessary care for J.M. and that her drug abuse cannot be treated so as to enable her to consistently provide the care needed. The trial court was justified in finding that D.M.M. failed to rectify her drug problem because of her continued abuse of drugs and alcohol and her failure to successfully complete any substance abuse treatment. This failure to rectify her drug abuse led to her absconding from supervision of her probation, the revocation of her probation, the restriction of her visiting privileges while in the county jail and in custody of the Department of Corrections, missed visitation with J.M., her return from the Kansas City Honor Center to Chillicothe, her escape from custody of the Kansas City Community Center and subsequent return to Chillicothe, and ultimately the requirement that she serve the entire term of her sentence for forgery. Her drug and alcohol use and other disruptive behavior also contributed to the foster family's request that D.M.M. not visit J.M. in their home or call him. The court's finding that D.M.M. will not rectify her drug problem is further supported by the fact that nearly all of her drug and alcohol abuse reported herein occurred while she was under the supervision of a probation officer who was constantly monitoring her for drug usage or while she was incarcerated.

D.M.M.'s contention that her failure to rectify her drug and alcohol abuse is due to the lack of efforts by DFS is without merit. In support of her argument that DFS failed to provide services to aid her in overcoming this drug problem, D.M.M. states that DFS is not able to abdicate its responsibilities to the Department of Corrections. Yet, the

record reflects that D.M.M. did not take advantage of the programs offered by the Department, nor did she benefit from the residential treatment programs prior to her incarceration. While at Chillicothe, D.M.M. had available and attended college level business courses, a drug treatment program, Positive Mental Attitude (PMA) sessions and Alcoholics Anonymous. She completed only the PMA sessions. Further, D.M.M. did not request any additional services from DFS.

■ The one area where D.M.M.'s contentions seem to have merit is in the scheduling of visitation by DFS. The record reflects that D.M.M. filed three motions requesting enforcement of her visitation rights during her incarceration and wrote numerous letters to DFS complaining of the lack of visitation and communication concerning her son. This would raise a question as to the diligence of DFS in providing visitation rights to D.M.M. and in encouraging her relationship with J.M. The court notes, however, that each time D.M.M. filed a motion, her visitation had been previously interrupted by her own behavior. The first time she absconded from probation and was unavailable for visitation for over four months; the second time she had escaped from custody and, although she was quickly apprehended, she was transferred within jail facilities over a four-month period before receiving a permanent placement at Chillicothe; and finally when she was released from prison, she did not contact with DFS for nearly two months. Clearly D.M.M.'s own behavior, not a lack of diligence on the part of DFS, was primarily responsible for her long absences from her child and the resulting deterioration of her relationship with J.M. J.M. was in foster care for nearly four years before the filing of the petition for termination. Although its conduct was not exemplary, DFS was sufficiently diligent in its efforts to facilitate the reunification process, in light of the circumstances of D.M.M. and her behavior.

■ As stated in *In Interest of M.L.W.,* 788 S.W.2d 759, 763 (Mo.App.1990), although § 211.447.2(3)(a) requires the court to consider the terms of a social service agreement, it also requires an affirmative duty on the part of the parent to support, communicate and visit the child and to show that the parent is committed to the child by showing an interest. In this case, D.M.M.'s affirmative duty is even greater. The fact that D.M.M. exhibited the desire to visit and maintain her relationship with J.M. is not enough, so long as she is unable to conquer the drug abuse which precludes any reunification with her child. The court notes, but is not persuaded by the seemingly short-lived improvement in D.M.M.'s circumstances immediately following the filing of the petition for termination.

The findings as stated in the subsequent order, entered in response to the mandate issued by this court in *In Interest of J.M.,* *supra,* now comply with the requirement of § 211.447.2(3). The juvenile office met its burden in proving the need for termination in that its evidence instantly tilted the scales in favor of termination. *In re Adoption of W.B.L.,* *supra.* Such evidence is clear, cogent and convincing, and the best interests of J.M. require termination.

The order of the juvenile court is in all respects affirmed.

All concur.